UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD AND HARRIET VAN LOO,<br><br>     Plaintiffs,<br><br>v.<br><br>CAJUN OPERATING COMPANY d/b/a<br>CHURCH'S CHICKEN, a Delaware<br>Corporation, RELIANCE STANDARD<br>LIFE INSURANCE COMPANY GROUP<br>LIFE POLICY (Policy Number GL 140042),<br>an employee welfare benefit plan, and<br>RELIANCE STANDARD LIFE INSURANCE<br>COMPANY, an Illinois Corporation,<br><br>     Defendants. | Case No. 14-cv-10604<br>Honorable Laurie J. Michelson<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT CHURCH'S CHICKEN'S MOTION TO DISMISS THE COMPLAINT
AND TO STRIKE JURY DEMAND [12] AND GRANTING RELIANCE STANDARD
LIFE INSURANCE COMPANY'S MOTION TO DISMISS COUNTS II THROUGH V
OF THE COMPLAINT AND TO STRIKE JURY DEMAND [15]**

Plaintiffs Donald and Harriet Van Loo bring this action pursuant to the Employee
Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. They assert that
Defendants Cajun Operating Company d/b/a Church's Chicken ("Church's"), Reliance Standard
Life Insurance Company ("Reliance"), and Reliance Standard Life Insurance Company Group
Life Policy (Policy No. GL 140042) ("the Plan") improperly denied them, as beneficiaries, the
full value of supplemental life insurance benefits following the death of their daughter, Donna
Van Loo. Presently before the Court is Defendant Church's Motion to Dismiss the Complaint
and to Strike Jury Demand (Dkt. 12) under Federal Rules of Civil Procedure 12(b)(6) and 12(f)
and Defendant Reliance Standard Life Insurance Company's Motion to Dismiss Counts II

through V of the Complaint and to Strike Jury Demand (Dkt. 15) under Federal Rules of Civil Procedure 12(b)(6) and 12(f).

The Court finds that Plaintiffs can proceed against Church's on only one count of the Complaint, Count II. Church's did not make the final decision to deny benefits and so it is not the proper defendant to a claim for denied benefits. Plaintiffs' federal common law claims are preempted by ERISA or otherwise fail to state a claim upon which relief can be granted. Church's had no duty to provide Plaintiffs with the documents that Plaintiffs requested. But Plaintiffs have adequately pled that Church's acted as a fiduciary when making misrepresentations to Ms. Van Loo concerning her coverage, and the relief they seek is available under 29 U.S.C. § 1132(a)(3).

As to Reliance, the Court likewise finds that Plaintiffs' federal common law claims are preempted by ERISA or otherwise fail to state a claim upon which relief can be granted. The Court also finds that Plaintiffs cannot state a claim against Reliance for the documents they requested but did not receive because Plaintiffs' "*de facto* Plan Administrator" argument does not pass muster under Sixth Circuit precedent. While Plaintiffs have alleged that Reliance took on duties as the Plan Administrator during the relevant time period, their only specific allegation is insufficient to show that Reliance was acting in a fiduciary capacity with respect to anything other than claims adjudication.

Finally, there is no right to a jury trial in actions brought under ERISA § 502, which Plaintiffs concede in their response.

The Court will therefore grant in part and deny in part Church's motion and grant Reliance's motion. The Court will also strike Plaintiffs' jury demand.

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6),[1] a case warrants dismissal if it fails "to state a claim upon which relief can be granted." When deciding a motion under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but the Court need not accept as true legal conclusions or unwarranted factual inferences. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In addition to the Complaint, the Court may consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims

---

[1] There was some discussion at oral argument as to the proper standard of review. Counsel for all three parties stated their belief that 12(b)(6) standards, rather than the arbitrary and capricious review, would be appropriate for the present motions. The Court agrees because Reliance did not move for dismissal on Count I, the claim to recover denied benefits, and Church's does not have discretionary authority over determinations of benefits eligibility. *See Bailey v. United States Enrichment Corp.*, 530 F. App'x 471, 473 (6th Cir. 2013) ("While this Court reviews the decision of a district court under Rule 12(b)(6) *de novo*, if the plan gives the administrator discretionary authority over determinations of benefits eligibility, then the decisions of a plan administrator as to an entitlement to benefits are reviewed under an arbitrary and capricious standard.")

contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

Under Rule 12(f), "the court may strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. A court has "liberal discretion to strike such filings" as it deems appropriate under Rule 12(f). *Fed. Nat'l Mortg. Ass'n v. Emperian at Riverfront, LLC*, No. 11-14119, 2013 U.S. Dist. LEXIS 143110, at *18 (E.D. Mich. Oct. 3, 2013) (citing *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)).

## II.  FACTUAL BACKGROUND

Defendant Reliance issued a Group Life Policy to Defendant Church's, effective January 1, 2006. (Church's Mot. to Dismiss Ex. B, Ins. Policy at PageID 107 [hereinafter "Plan"]). The policy was a welfare benefit plan that provided both Basic Life and Accidental Death and Dismemberment benefits and Supplemental Life Insurance benefits. (Compl. at ¶¶ 4, 13.) Church's was the designated policyholder and administrator of the Plan and Reliance was the designated claims administrator. (Dkt. 1, Compl. at ¶¶ 10–11; Church's Mot. to Dismiss Ex. A, Summary Plan Description at PageID 93–94 [hereinafter "SPD"].) The Summary Plan Description states that Reliance served as the "claims review fiduciary" with "discretionary authority to interpret the Plan and . . . determine eligibility for benefits." (SPD at PageID 103.)

Church's elected the "Self-Administered" billing and administration option for the Policy. This meant that as the policyholder and appointed administrator, Church's would "typically [be] responsible for ensuring that coverage elections (including any required proof of good health) are processed in accordance with the terms and conditions of the applicable policy and that premium remittances are accurate and timely." (Reliance Mot. to Dismiss Ex. C, Appeal

Letter, at PageID 247–48.) It also meant that Reliance would "typically ha[ve] no record of individual coverage or premium amounts." (*Id.*)

"[A]ctive, Full-time employee[s], except . . . temporary or seasonal" workers, were eligible to enroll in the Plan. (Plan at PageID 111.) As noted, the Plan provided both "Basic Life" and "Supplemental Life" benefits. (Compl. at ¶ 13.) The Basic Life benefits consisted of "One (1) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $200,000." (Plan at PageID 111.) Eligible employees could elect Supplemental Life benefits in multiples of one, two, three, four, or five times their annual salaries; for example, a salaried employee with an annual salary of $100,000 could elect "2x salary" in Supplemental Life benefits for a total Supplemental Life amount of $200,000. (*See id.* at ¶ 18; Plan at PageID 111.) Church's collected Benefit Enrollment/Change forms annually. (*See id.* at ¶¶ 18; 24.) Once an employee enrolled in the Plan, Church's would deduct premiums from the employee's paycheck. (*See id.* at ¶ 21.)

The Plan provides that "[a]mounts of insurance over $300,000 are subject to [Reliance's] approval of a person's proof of good health." (Plan at PageID 111.) Without proof of good health and/or an Evidence of Insurability Form ("EIF"), a beneficiary would only be eligible for the "guaranteed issue" amount of $300,000. (*See* Compl. ¶¶ 40–41.)

Plaintiffs' daughter, Donna Van Loo, began working for Church's on May 21, 2007. (Compl. at ¶ 17.) She earned an annual salary of $100,000. (*Id.* at ¶ 18.) On July 29, 2007, Ms. Van Loo enrolled in the Plan and elected Basic Life valued at one times her salary and Supplemental Life valued at two times her annual salary. (*Id.* at ¶ 18.) Thus, her total coverage for 2007 was $300,000. Ms. Van Loo did not know that she had reached the "guaranteed issue" threshold. (*See* Compl. ¶¶ 19–20, 40–41.)

5

On November 11, 2007, Ms. Van Loo, through an Open Enrollment Change Form, increased her supplemental benefits election to three times her salary. (Compl. at ¶ 22.) As a result, her election was $100,000 in Basic Life and $300,000 in Supplemental Life, for a total of $400,000. Thus, she crossed the "guaranteed issue" threshold. She still was not aware of the proof of good health requirement, nor did she receive an EIF. (*Id.* at ¶ 43.) She continued her "3x salary" election through 2010, and Church's adjusted her premiums during that time, presumably because her salary increased. (*Id.* at ¶¶ 23, 25, 27.)

In 2010, Church's apparently asked Reliance to mail an EIF to Ms. Van Loo. (Appeal Letter at PageID 247.) Reliance says that it "made an exception" to its usual practice of leaving plan administration to Church's and did mail the EIF per Church's' request (*Id.*); regardless of whether this is true, Ms. Van Loo, her parents allege, did not receive the EIF. (Compl. ¶ 43.)

In 2011, Ms. Van Loo increased her election to four times her salary (rounded to the next highest thousand). (*Id.* at ¶ 28.) Church's adjusted her premium deduction accordingly. (*Id.* at ¶ 29.)

She maintained her election of "4x salary" for Supplemental Life Insurance Benefits in 2013. (*Id.* at ¶ 32.) After Ms. Van Loo submitted her Benefit Enrollment form for 2013, Church's generated a message congratulating her on "completing [her] benefits enrollment for 2013." (*Id.* at ¶ 33.) Shortly thereafter, Church's increased Ms. Van Loo's premium deduction to $97.02 per paycheck for Supplemental Life benefits. (*Id.* at ¶ 33.)

Throughout Ms. Van Loo's employment, Church's made premium payments to Reliance by deducting the amounts owed from her biweekly paycheck. (*Id.* at ¶¶ 21, 23, 25, 27, 29, 31, 34.) Ms. Van Loo fell ill in late December 2012 and subsequently went on disability leave. (Compl. at ¶ 35.) She did not receive a paycheck while on leave. (*Id.* at ¶¶ 37–39.) Thus, on

6

February 21, 2013, one of Church's Benefits, Compensation, and Leave Specialists sent Ms. Van Loo a letter advising that "[w]hile you are not receiving paychecks from Church's, benefit premiums are not being deducted and you must pay these directly to Church's." (Dkt. 24, Pls.' Resp. Br. Ex. B.) The letter provided a breakdown of required payments including $97.31 for her Supplemental Life Insurance benefits. (*Id.*) Ms. Van Loo made these premium payments while she remained on disability leave. (Compl. at ¶ 38.)

Ms. Van Loo passed away on March 4, 2013. (*Id.* at ¶ 36.) Two weeks later, on March 18, Plaintiffs, Van Loo's parents, submitted a claim statement to Reliance. (*Id.* at ¶ 39; Pls.' Resp. Ex. C, Proof of Loss Claim.) At the time of her death, Ms. Van Loo's annual salary was $122,200. (Compl. at ¶ 39.) Thus, Plaintiffs sought benefits in the amount of $614,000: $125,000 in basic life insurance benefits, and $489,000 in supplemental life insurance benefits. (*Id.*)

On April 17, 2013, Reliance denied Plaintiffs' claim for benefits in excess of $300,000 because "proof [of good health] was never received in our office." (Dkt. 15, Reliance's Mot. to Dismiss Ex. B, Denial Letter; Compl. at ¶¶ 40–41.) Reliance awarded only the guaranteed issue amount of $300,000: $125,000 in basic life insurance benefits and $175,000 in supplemental life insurance benefits. (Compl. at ¶ 45; Denial Letter at 1.) Reliance also directed Church's to refund to Plaintiffs all the premium payments made by their daughter to obtain coverage in excess of $300,000. (Compl. at ¶ 48.) Two months later, Church's complied with this request and sent a check to Plaintiffs for $3,900.76. (*Id.* at ¶ 49.) Plaintiffs did not cash the check. (*Id.* at ¶ 50.)

Plaintiffs appealed the claim determination to Reliance's internal review board on June 13, 2013. (Compl. at ¶ 51.) On August 1 and August 5, 2013, Plaintiffs requested from Church's and Reliance "any documents evidencing that . . . Defendants provided Ms. Van Loo with an [Evidence of Insurability] form or requested that she complete [one]." (*Id.* at ¶ 52.) Neither

7

Church's nor Reliance provided Plaintiffs with such documentary evidence. (*Id.* at ¶ 53.) Reliance denied Plaintiffs' appeal on November 1, 2013. (*Id.* at ¶ 55; Appeal Letter at PageID 249.)

Plaintiffs allege that the 2007 Benefit Enrollment/Change Form that Ms. Van Loo completed (and presumably subsequent enrollment forms) did not indicate that Ms. Van Loo was required to provide any sort of evidence of good health or complete an Evidence of Insurability Form ("EIF") as a condition for obtaining Supplemental Life Insurance Benefits. (Compl. at ¶ 19.) They further allege that Defendants never provided the terms of the Plan to Ms. Van Loo during her employment, never informed Ms. Van Loo that she was required to submit proof of good health as a condition for obtaining Supplemental Life benefits in excess of $300,000, and never provided her with an EIF. (*Id.* at ¶¶ 20, 42–44.)

Plaintiffs brought this lawsuit against Church's, Reliance, and the Plan. Plaintiffs assert wrongful denial of full benefits in violation of ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B) (Count I) (*id.* at ¶¶ 57–67), breach of fiduciary duty under ERISA § 502(a)(3), codified at 29 U.S.C. § 1132(a)(3) (Count II) (*id.* at ¶¶ 68–78), common law claims of equitable estoppel and unjust enrichment (Counts III and IV) (*id.* at ¶¶ 79–96), and denial of requests for information in violation of ERISA § 502(c), codified at 29 U.S.C. § 1132(c) (Count V) (*id.* at ¶¶ 97–105). Plaintiffs also asserted a demand for a jury trial. (*Id.* at 21–22.)

Both Church's and Reliance filed motions to dismiss and to strike the jury demand. (Dkt. 12; Dkt. 15). The Court now addresses both motions.

8

## III. ANALYSIS

### A. Count I – Claim to Recover Full Benefits under 29 U.S.C. § 1132(a)(1)(B)

In Count I, Plaintiffs seek the full amount of their daughter's supplemental life insurance benefits under 29 U.S.C. § 1132(a)(1)(B), which allows beneficiaries "to recover benefits due to [them] under the terms of [the] plan." Only Church's has moved to dismiss this count, contending that "[a]s an employer sponsor without final claims determination authority or financial responsibility for [the benefit], [it] is not a proper defendant" to this claim. (Church's Br. at 9.) The Court agrees.

Where the employer and the insurance company both have an "administrator" designation, as is the case here, the proper defendant to a denial of benefits claim is the party who exercised final authority over the claims determination. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2006). "An employer who does not control or influence the decision to deny benefits is not the fiduciary with respect to denial of benefit claims." *Id.* at 428.

In this case, the party with final claims determination authority is Reliance. While the Summary Plan Description names Church's as the "Plan Administrator," (SPD at PageID 92–93), it directs participants and beneficiaries to submit benefits claims to Reliance. (*Id.* at PageID 94.) Moreover, the Summary states:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(*Id.* at PageID 103.) Plaintiffs acknowledge that although Church's was designated administrator of the Plan, Reliance was the designated claims administrator. (Compl. at ¶¶ 10–12.) And Plaintiffs do not allege that Church's made the decision to deny Plaintiffs' claim for benefits or

9

that it controlled or influenced the decision. To the contrary, Plaintiffs allege that "RELIANCE wrongfully concluded that Plaintiffs were not entitled to any life insurance under the Group Life Policy in excess of $300,000, and it refused to pay an additional $314,000 in Supplemental Life Insurance Benefits owed to Plaintiffs." (Compl. at ¶ 64.) And further: "Based on the evidence, RELIANCE'S denial of the full amount of Plaintiffs' Supplemental Life Insurance Benefits was arbitrary and capricious and otherwise in violation of the Group Life Policy." (*Id*. at ¶ 67.) Reliance, therefore, is the only proper defendant to Count I. *Cf. Moore*, 458 F.3d at 438 ("MTA is the plan administrator, [but] Lafayette is the claims administrator and exercised full authority in adjudicating Plaintiff's claim for benefits. . . . Lafayette, and not MTA, is therefore the proper party defendant for a denial of benefits claim by Plaintiff.") Indeed, Reliance did not move to dismiss Count I. (*See* Dkt. 15.)

Plaintiffs insist that if not for Church's failure to provide Ms. Van Loo with an EIF, Reliance would not have denied Plaintiffs' claim for benefits. (Pl.'s Resp. at 12.) However, in a direct claim for benefits, the question is not whose actions gave rise to the conditions on which a claim was denied. "The question is whether [the defendant] played any role in controlling or influencing [the] benefits decision." *Ciaramitaro v. Unum Life Ins. Co. of Am.*, 521 F. App'x 430, 438–39 (6th Cir. 2013). Even if Reliance's decision to deny benefits was the direct result of Church's failure to provide Ms. Van Loo with the EIF, that failure does not mean that Church's "control[ed] or influenc[ed]" the benefits decision. The Court therefore finds that Church's is not a proper defendant to Plaintiffs' claim under 29 U.S.C. § 1132(a)(1)(B) to recover denied benefits.

Count I for recovery of benefits will be dismissed as to Church's.

**B.  Count II – Claim for Breach of Fiduciary Duty Under 29 U.S.C. § 1132(a)(3)**

Plaintiffs next allege that both Reliance and Church's breached their fiduciary duties to Ms. Van Loo and Plaintiffs "by misrepresenting Ms. Van Loo's eligibility for Supplemental Life Insurance Benefits under the Group Life Policy . . . ." (Compl. at ¶ 78.) Plaintiffs seek compensatory damages for the alleged breach in the form of "the full amount of life insurance benefits due them, including interest on all unpaid benefits" and "disgorgement of any profits." (Compl. at ¶ 105(b), (d).)

Because Plaintiffs seek to establish a claim for breach of fiduciary duty based on alleged misrepresentations, they must show: "(1) that [Church's and/or Reliance] was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that [Ms. Van Loo] relied on those misrepresentations to [her] detriment." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) (citations omitted). The Court will address each of these elements in turn and then turn to the matter of appropriate relief.

**1.  Fiduciary Capacity**

Church's correctly notes that "the viability of [Plaintiffs' claim under (a)(3)] . . . depends on whether Church's was acting as an ERISA fiduciary when it engaged in the acts and omissions alleged in the Complaint." (Church's Mot. to Dismiss at 11.) The same holds true for Reliance because "[i]n every case charging a breach of ERISA fiduciary duty . . . the threshold question . . . [is] whether that person was acting as a fiduciary (that is, was performing a fiduciary function.)" *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

"For the purposes of ERISA, a 'fiduciary' not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or

authority over a plan's management, administration, or assets."[2] *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006); *see also* 29 U.S.C. § 1002(21)(A) (defining when "a person is a fiduciary with respect to a plan"). Courts therefore analyze fiduciary status by "*functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).

"Congress intended the term 'ERISA fiduciary' to be interpreted broadly." *Six Clinics Holding Corp., II v. Cafcomp. Sys.*, 119 F.3d 393, 401 (6th Cir. 1997) (citing *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988)). Nonetheless, there are limitations. For example, Department of Labor ("DOL") regulations direct that a person who performs "purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority." 29 CFR § 2509.75-8. But the Sixth Circuit has commented that it is possible for an administrator to act as a fiduciary despite engaging in some "non-fiduciary functions listed in the DOL guidelines" if the administrator "appears to have had discretionary authority with regard to [those] functions." *Six Clinics*, 119 F.3d at 402 (affirming grant of preliminary injunction based on alleged breach of fiduciary duty).

Finally, when the alleged fiduciary is both an employer and a plan sponsor, as Church's is here, there are special analytical considerations. "Employers who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust." *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000). ERISA's fiduciary standards are only implicated when the employer wears its fiduciary

---

[2] ERISA defines a "person" to include a corporation. 29 U.S.C. § 1002(9).

hat; as such, "ERISA does not require that day-to-day corporate business transactions, which may have a collateral effect on prospective contingent employee benefits, be performed solely in the interest of plan participants." *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995); *accord Musto v. American Gen. Corp.*, 861 F.2d 897, 911 (6th Cir. 1988) ("In its corporate role as employer, first of all, the company must see that such benefit plans as it chooses to maintain are designed to further the company's business interests in consonance with the company's obligations to its stockholders. . . . In its role as plan administrator, secondly, the company must exercise fiduciary responsibilities in managing and controlling any assets of the plan . . . . And the company must discharge its administrative duties solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administration."); *see also Hunter*, 220 F.3d at 719 ("[I]t is not the exercise of discretion alone that makes an employer's action subject to fiduciary standards, . . . [but] rather, the exercise of discretion must relate to plan management or administration.").

Thus, the Court must "examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards." *Hunter*, 220 F.3d at 719 (citation and internal punctuation omitted); *accord COB Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004); *see also Hahn Acquisition Corp. v. Hahn*, No. 99-40426, 2001 U.S. Dist. LEXIS 7697, at *11 (E.D. Mich. Mar. 5, 2001) ("In many cases, an employer-sponsor of an employee benefit plan will act as a fiduciary to the plan because the employer-sponsor exercises discretionary control over the administration and management of the plan.").

To summarize, if the Complaint and documents central to it show that Church's was wearing its "fiduciary hat" by exercising discretionary authority to manage the plan when making the alleged misrepresentations, Plaintiffs have adequately pled that Church's acted as a fiduciary. If the challenged actions were mere ministerial functions performed without any discretionary authority, Plaintiffs have not pled that Church's acted as a fiduciary.

The Complaint instructs that the conduct at issue for the purpose of the fiduciary breach claim consists of communications from Church's to Ms. Van Loo concerning her supplemental coverage level. (Compl. at ¶ 78.) More specifically, the Plaintiffs allege that Church's engaged in the following conduct:

> 1) repeatedly accepting [Ms. Van Loo's] enrollment and election forms [Compl. ¶¶ 18, 22, 28, 32]; 2) repeatedly advising her in writing that she had completed her enrollment [*id.* at ¶ 33]; 3) repeatedly accepting her premiums [*id.* at ¶¶ 21, 23, 25, 27, 29, 31, 34]; and 4) sending her a letter as recently as February 2013 advising her that she had to pay to Church's directly the $97.31 bi-weekly premium to retain Supplemental Life Insurance [*id.* at ¶ 38].

(Dkt. 24, Pl.'s Resp. Br., at 19.) In addition, Plaintiffs allege that Church's engaged in this conduct without ever providing Ms. Van Loo with the Policy (Compl. at ¶ 42), informing her of the proof of good health requirement, (*id.* at ¶ 43), or providing her with a proof of good health form with instructions that she would have to complete and submit it before coverage over $300,000 became effective, (*id.* at ¶ 44).

The Court finds that the conduct alleged in the Complaint falls within Church's' discretionary authority to manage the plan; therefore, Church's acted as a fiduciary when engaging in the conduct subject to complaint here. First, the plan documents name Church's as the Plan Administrator. (SPD at PageID 92–93.) Second, Church's utilized the "Self-Administered" billing option in its arrangement with Reliance. This meant that Church's was "responsible for ensuring that coverage elections (including any required proof of good health)

14

are processed in accordance with the terms and conditions of the applicable policy." (Appeal Letter at PageID 248.) And the acts alleged in the Complaint all fall within Church's administrator capacity under the plan documents.

Perhaps some of the acts alleged in the Complaint, taken in isolation, could be viewed as ministerial acts falling within 29 CFR § 2509.75-8. Indeed, that is the crux of Church's argument:

> The challenged conduct alleged against Church's in the complaint falls squarely within the list of 'ministerial' non-fiduciary functions of an employer plan sponsor outlined by the DOL in 29 C.F.R. 2509.75-8 preparation of employee communications material, advising participants of their rights under the plan, collection of contributions, and preparation of reports concerning participants' benefits.

(Church's Br. at 13–14.)

But to analyze the conduct in this manner would be an overly narrow reading of the Complaint. Plaintiffs allege that Church's did more than accept the enrollment form and process premiums. They also allege that Church's delivered direct and individualized communications to Ms. Van Loo assuring her that she had completed the necessary steps to attain a certain level of coverage. And equally important, it is possible for an administrator to engage in some ministerial functions but still act as a fiduciary if those functions fall within the administrator's discretionary authority to manage the plan.

In *Six Clinics*, an employer sued its employee benefits provider, alleging that the benefits provider violated its fiduciary duties under the ERISA-covered Plan by administering the Plan contrary to its terms, engaging in self-dealing, acting on behalf of an adverse party, and receiving consideration from a third party in connection with a transaction involving plan assets. 119 F.3d at 401. The defendant argued that it performed only ministerial functions with respect to the Plan and therefore could not be held liable as a fiduciary. *Id.* at 402. The court disagreed: there was

15

"enough evidence in the record to suggest that [defendant] did act as a fiduciary" because (1) defendant was to provide services "as [defendant] deems necessary" and annual reports "as required in the judgment of [defendant]"; (2) defendant "had the authority to amend the Plan"; and (3) defendant's "promotional material indicates that it assumed the role of a fiduciary." *Id.*

Moreover, actions like the ones alleged in the Complaint have been held to be acts of plan administration and management by an employer-plan administrator that give rise to fiduciary liability. *See, e.g.*, *Rainey v. Sun Life Assur. Co.*, No. 3-13-0612, 2014 U.S. Dist. LEXIS 141779, at *2 (M.D. Tenn. Oct. 6, 2014) (affirming magistrate judge's determination that an employer acted as a fiduciary when it made representations regarding benefits to employees through a web portal); *Kulkarni v. Metro. Life Ins. Co.*, 187 F. Supp. 2d 724, 728 (W.D. Ky. 2001) (holding that employer-plan administrator's mailing of decedent's enrollment forms to insurance provider implicated employer's "fiduciary duty to act with reasonable prudence to inform [decedent] about employee benefits" (citing *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999)); *Negley v. Breads of the World Med. Plan*, No. 02-D-840, 2003 U.S. Dist. LEXIS 14006, at *6 (D. Colo. Aug. 1, 2003) (adopting magistrate judge's conclusion that an employer-plan sponsor acted as a fiduciary when it failed to notify a beneficiary of a 31-day enrollment period and 18-month pre-existing condition exclusion).

The Court now addresses Reliance. As an initial matter, Count II appears to be directed largely to Church's, not Reliance. Plaintiffs allege that both Defendants "accepted Ms. Van Loo's premiums for Supplemental Life Insurance Benefits for almost six years," (Compl. ¶ 71), "accepted Ms. Van Loo's benefit election forms," (*id.* at ¶ 72), but never "advise[d] Ms. Van Loo that her filling out and submitting an EIF was a condition precedent to her eligibility for Supplemental Life Insurance Benefits in excess of a total life insurance benefit amount of

$300,000," (*id.* at ¶ 73). But the other allegations in the Complaint clarify that only Church's collected premiums directly from Ms. Van Loo and only Church's accepted and processed her benefit election forms. (*See id.* ¶ 18–38.) The only plausible, non-conclusory allegation is the allegation that Reliance never advised Ms. Van Loo of the EIF requirement.

Therefore, the act in question is mailing, or failing to mail, Ms. Van Loo the proof of good health requirement. Here, the parties do not dispute that Reliance took responsibility for mailing EIF forms to Church's employees in 2010, a task that Church's, as plan administrator, would normally complete. (Reliance Br. at 9; Dkt. 25, Pl.'s Resp. Br. at 19.) The Court has already decided that such an act, when completed by Church's, was undertaken in a fiduciary capacity due to Church's authority to manage and administer the Plan. In contrast, Reliance is the Claims Administrator (and is clearly a fiduciary for *that* purpose) but, despite Plaintiffs' conclusory allegations to the contrary (*see* Compl. ¶ 12 ("[D]uring the relevant time period, Reliance undertook responsibility as the Administrator of the Group Life Policy.")), Reliance does not have discretionary authority for Plan Administration purposes. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 552 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 1239 (2013) ([T]he complaint contains only the most conclusory of allegations that USW exercises discretionary control or authority over plan administration, management, or assets, so it cannot be considered a *de facto* fiduciary under ERISA."). Indeed, at oral argument counsel for Reliance pointed out that the EIF mailing was a one-time "favor to a client" rather than an act undertaken in any sort of fiduciary capacity. (Dkt. 31, Tr. at 31.) Moreover, Reliance completed this task at Church's' instruction. Reliance was not acting as a fiduciary when it made a one-time exception to its usual responsibilities to send a mailing to a list of people that Church's provided. Accordingly,

Plaintiffs cannot state a claim against Reliance for breach of fiduciary duty in the administration of the Plan.[3]

The Court finds, therefore, that the well-pleaded facts in the Complaint and the documents central to the Complaint raise a plausible inference that only Church's acted as a fiduciary with respect to the challenged conduct.

### 2. Misrepresentations

The Court now considers whether Plaintiffs have adequately pled that the conduct amounted to "material misrepresentations." *James*, 405 F.3d at 449. "Misleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty.'" *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (quoting *Berlin v. Mich. Bell Tele. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)). "[A] misrepresentation is material if

---

[3] Reliance also argued that it presented "irrefutable evidence that that form was sent to Decedent" by attaching to its motion the appeal letter, which says that Reliance in fact mailed the EIF to Ms. Van Loo. (Dkt. 26, Reliance Resp. Br. at 2.) It is true that "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013). However, the Sixth Circuit has cautioned against elevating contradictory statements from an exhibit to a motion to dismiss over allegations that are stated in a complaint where the document is not the basis for the allegations. *See Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) ("Where a plaintiff attaches to the complaint a document containing unilateral statements made by a defendant, where a conflict exists between those statements and the plaintiff's allegations in the complaint, and where the attached document does not itself form the basis for the allegations, Rule 10(c) "does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact."); *see also Carrier Corp. et al. v. Outokumpu Oyj et al.*, 673 F.3d 430, 440 (6th Cir. 2012). But because the Court has held that Reliance was not acting in a fiduciary capacity, it need not reach the issue of breach. Nor will the Court reach Reliance's other argument that Plaintiffs cannot assert a duplicative claim of fiduciary breach when a direct claim for benefits (Count I) remains pending. (Dkt. 15, Reliance Br., at 7.) That argument implicates disgorgement as a potential remedy under ERISA, a question that the Sixth Circuit is currently deliberating en banc. *See Rochow v. Life Ins. Co. of N. Am.*, 737 F.3d 415, 426 (6th Cir. 2013), *vacated*, 2014 U.S. App. LEXIS 3158 (6th Cir. Feb. 19, 2014).

there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing disability benefits to which she may be entitled." *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). Such material misrepresentations can constitute breach "regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *James*, 305 F.3d at 452 (citation omitted).

ERISA fiduciary duty provisions incorporate the common law of trusts: the "duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Krohn*, 173 F.3d at 548. Accordingly, numerous Sixth Circuit cases have found breach of fiduciary duty where an administrator makes false or incomplete statements regarding benefits entitlement under an existing plan.[4]

The roots of this analysis are found in *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (en banc). There, a putative class of GM retirees asserted that GM had breached its fiduciary duties under ERISA by modifying a health care benefits plan that had previously provided salaried employees with fully covered basic health care for life. *Id.* at 395. The court held that while GM "may have acted in a fiduciary capacity when it explained its retirement program to the early retirees," there was no breach because "GM was not required to disclose in its summary plan descriptions that the plan was subject to amendment or termination." *Id.* at 405. But the court also commented that "[h]ad an early retiree asked about the possibility of the plan changing, and had he received a misleading answer, or had GM on its own initiative provided

---

[4] The Sixth Circuit has also discussed the duty to inform in the context of prospective benefit plans that are under "serious consideration." *See, e.g.*, *Berlin v. Mich. Bell. Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988); *Drennan v. Gen. Mot. Corp.*, 977 F.2d 246, 250 (6th Cir. 1992).

misleading information about the future of the plan . . . a different case would have been presented." *Id.* at 406.

Such a case was presented in *Krohn v. Huron Memorial Hospital*, 173 F.3d 542 (6th Cir. 1999). In that case, the plaintiff was permanently disabled in an automobile accident. *Id.* 545. The Sixth Circuit held that the defendant—her employer and plan administrator—breached its fiduciary duty by failing to respond adequately to a request by Krohn's husband for information about plan benefits and by failing to alert its long-term-disability insurer that Krohn had made an application for benefits. *Id.* In doing so, the Court said: "knowledgeable about Krohn's situation and armed with periodic updates about her disability status, [Krohn's employer] owed [her] a duty to inform her–carefully, completely, and accurately–of the long-term disability benefits to which she was entitled . . . so that she could weigh her options and make informed decisions." *Id.* at 550.

In *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439 (6th Cir. 2002), the defendant amended its health care plan to require participants to incur greater out-of-pocket expenses. *Id.* at 444. It encouraged employees to take early retirement and spoke with them about their benefits during group meetings and exit interviews, including informing them that their benefits would remain unchanged during their lifetimes. *Id.* at 444–45. In response to the employer's contention that certain plaintiffs had not specifically asked about their benefits, the court reasoned:

> an employer or plan administrator fails to discharge its fiduciary duty to act solely in the interest of the plan participants and beneficiaries when it provides, on its own initiative, materially false or inaccurate information to employees about the future benefits of a plan. *Under these circumstances, it is not necessary that employees ask specific questions about future benefits or that they take the affirmative step of asking questions about the plan to trigger the fiduciary duty.* The breach of fiduciary duty occurs when the employer or plan administrator on its own initiative provides misleading information about the future benefits of a plan.

20

*Id.* at 455 (emphasis added).

The Sixth Circuit emphasized this aspect of *James* in *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833 (6th Cir. 2003). In *Gregg*, an employer encouraged the plaintiff employees to enroll in a life insurance plan, assuring them during question and answer sessions that the premium payments would not increase as the employees aged, that coverage would continue into retirement, and that any other premium increase would be minimal. *Id.* at 837. In fact, the employer retained the right to cancel the policy after three years with appropriate notice and, unbeknownst to plaintiffs, the plan required at least fifty participants in order for coverage to continue. *Id.* at 847. The court found that these misrepresentations constituted a breach of the employer's fiduciary duties and explained that the question of whether plaintiffs had asked specific questions to trigger the misrepresentations was not dispositive:

> ERISA imposes trust-like fiduciary responsibilities and a trustee is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person. . . . Defendants had an affirmative obligation to provide Plaintiffs with this material information *whether or not they asked for it*. The fact that Plaintiffs did request disclosure of this material information renders Defendants' violations of *Pirelli, Armstrong* and *Krohn* all the more apparent.

*Id.* at 847–48 (emphasis added).

The court also explained that the reasoning in *Sprague* and *James*, though originally conducted in the context of pension plans, would apply equally to welfare benefit plans so long as the plan administrator is "providing information." *Id.* at 844–845.

Turning to the facts of this case, the Court finds that the manner in which Church's led Van Loo to believe she had satisfied all necessary requirements for obtaining Supplemental Life Insurance benefits states a claim for breach of fiduciary duty. First, the only mention of the proof of good health requirement is in the Plan itself. But Plaintiffs allege that Church's never provided

21

the Plan to Ms. Van Loo. The Summary Plan Description that Church's did provide does not mention a good health requirement or the necessity of providing an EIF to qualify for Supplemental Life Insurance Benefits. Nor does the Benefit Enrollment Form, according to the Complaint. (Compl. at ¶ 19.)

Second, according to the Complaint, Church's never provided Van Loo with an EIF or otherwise advised her about the need for proof of good health. (*Id.* at ¶ 43.) Presumably, Church's knew that it had no proof of good health from Van Loo; in fact, in 2010, years after Ms. Van Loo had crossed the $300,000 threshold, Church's indicated to co-defendant Reliance that it had not yet received proof of good health from Ms. Van Loo. (Appeal Letter at PageID 247.) Yet Church's deducted premium payments for the Supplemental Life benefits from her paycheck for over five years.

Third, Church's affirmatively communicated to Ms. Van Loo that coverage over $300,000 had become effective. At one point, Church's expressly congratulated Van Loo on completing her enrollment for Supplemental Life benefits. When Van Loo was out on disability leave, Church's sent her a letter advising her that she needed to pay her Supplemental Life Insurance premiums directly because she was not receiving a paycheck from which they could be deducted. And the amount listed in the letter corresponded directly to the premium payments that were deducted for the "4x" coverage.

Finally, it is not material that Ms. Van Loo did not ask Church's about the EIF requirement. The parties cite no case law to demonstrate that misleading information that a fiduciary provides on its own initiative to a plan participant, that is individualized to her coverage and circumstances, should be treated any differently than misleading individualized information that is provided in response to a specific request. Indeed, the court in *Krohn* noted

that the plan participant's "failure to specifically request information from [defendant] about long-term disability benefits did not relieve [defendant] of its fiduciary duty to provide complete information . . . ." 173 F.3d at 547. And, as discussed above, the Sixth Circuit has since affirmatively held that fiduciaries have a duty to provide material information to beneficiaries "whether or not they ask[] for it." *Gregg*, 343 F.3d at 848.

The Court finds that Plaintiffs have adequately pled that Church's, on its own initiative, made material misrepresentations to Ms. Van Loo.

### 3.  Detrimental Reliance

Plaintiffs have adequately pled that Ms. Van Loo relied on Church's misrepresentations to her detriment. Taking the allegations in the Complaint as true, Ms. Van Loo was never provided with a copy of the plan or with an EIF and instead relied on Church's representation that her election for coverage in excess of $300,000 was effective. (Compl. at ¶ 74.) She relied on that representation when she continued to pay her premiums in full, even when they were no longer deducted from her paycheck. (*Id.* at ¶ 38.) And she did not seek other coverage that might have offered additional benefits. (*See id.* ¶ 18–34.)

Plaintiffs have adequately pled a claim for breach of fiduciary duty against Church's.

### 4.  Appropriate Relief

The Court now turns to the matter of appropriate relief for a breach of fiduciary duty claim under ERISA Section 502(a), codified at 29 U.S.C. § 1132(a). That section provides:

A civil action may be brought – . . .

>  (3) by a participant, beneficiary, or fiduciary

>>  (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

>>  (B) to obtain other appropriate equitable relief . . . .

23

The law is somewhat unsettled as to whether "appropriate equitable relief" can include the compensatory damages Plaintiffs seek.

In *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), the Supreme Court considered whether ERISA authorized suits for money damages against non-fiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. It answered that narrow question in the negative. *Id.* at 263. In reaching that conclusion, the Court considered the following two possible interpretations of the scope of "equitable relief" authorized by § 502(a)(3): either (a) typical equitable remedies (such as injunction, mandamus, and restitution, but not compensatory damages), or (b) whatever relief a court of equity was empowered to provide. *Id.* at 256–57. The Court reasoned that interpreting "equitable relief" to mean "whatever relief a common-law court of equity could provide in such a case" would "limit the relief not at all" and "render the modifier superfluous." *Id.* at 257–58. Thus, the Court held that the "equitable relief" listed in § 502(a)(3) referred only to the typical equitable remedies.

In *CIGNA Corp. v. Amara*, --- U.S. ---, 131 S. Ct. 1866, 1880, 179 L.Ed. 2d 843 (2011), the Court again had occasion to comment on the nature of equitable relief under § 502(a)(3). In *Amara*, participants in CIGNA Corporation's employee pension plan brought suit alleging that CIGNA had provided inadequate notice of significant changes to the plan. *Id.* at 1868. The district court, relying on § 502(a)(1)(B), reformed the plan and ordered CIGNA to award benefits under the reformed terms. *Id.* at 1876. The Second Circuit affirmed. *Id.* at 1876. But the Supreme Court disagreed: the district court's "Step 1" of reforming the plan could not have been authorized by § 502(a)(1)(B). Instead, the Court stated, "the types of remedies the court entered here fall within the scope of the term 'appropriate equitable relief' in § 502(a)(3)." *Id.* at 1880.

24

And in considering the district court's order that "the plan administrator . . . pay to already retired beneficiaries money owed them under the plan as reformed," the Court, in dicta, limited *Mertens*' holding regarding compensatory damages on the ground that *Mertens* involved a suit against a non-fiduciary:

> Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable." The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary. Thus, insofar as an award of make-whole relief is concerned, the fact that the defendant in this case, unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference. In sum, contrary to the District Court's fears, the types of remedies the court entered here fall within the scope of the term "appropriate equitable relief " in § 502(a)(3).

*Id.* at 858 (citations omitted).

The Sixth Circuit reached a similar conclusion in the pre-*Amara* case *Krohn v. Huron Memorial Hospital*, the facts of which were described in detail in the previous section. Having found that the defendant-hospital was liable for breach of fiduciary duty under § 502(a)(3), and also having found that the plaintiff had no other cause of action under ERISA, the court concluded that "the defendant [was] liable for the lost benefits that the plaintiff had sustained" even though her claim fell solely under § 502(a)(3). 173 F.3d at 551.

But in the unpublished pre-*Amara* case *Alexander v. Bosch Automotive Systems, Inc.*, 232 F. App'x 491, 501 (6th Cir. 2007), the Sixth Circuit, relying on *Mertens*, reached the opposite conclusion. In *Alexander*, the defendant-employer conceded liability under ERISA § 510 (codified at 29 U.S.C. § 1140) for having purposefully timed the plaintiffs layoffs and defendant's plant's closure to avoid paying plant-closure benefits to the plaintiffs. *Id.* at 493. Section 510 prohibits interference with employee benefits but does not establish fiduciary duties.

25

*See* 29 U.S.C. § 1140 (framing prohibitory language as applicable to "any person"). As relief, the district court had ordered the defendant to add plaintiffs' names to the list of employees entitled to plant closure benefits. *Id.* at 496. The defendant argued that this remedy did not constitute "appropriate equitable relief" under § 502(a)(3). *Id.* at 494. The Sixth Circuit first concluded that this remedy did not fall under the "traditional equitable remedy of reformation" and then considered "whether we could fashion any other sort of equitable relief for Plaintiffs, specifically . . . whether we could award equitable restitution under these circumstances." *Id.* at 500.

The court answered this question in the negative: "any restitutionary-type relief in this case would merely compel the payment of money from a general fund and constitute money damages." *Id.* at 501. Such money damages, the court stated, could not be recovered in equity in the context of the case because the plaintiffs could not meet their burden to establish that "the funds they seek are traceable and readily identifiable." *Id.* at 500–01 (citing *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) ("[N]ot all relief falling under the rubric of restitution is available in equity. . . . Whether it is legal or equitable depends on the basis for [the plaintiff's] claim and the nature of the underlying remedies sought.")). Therefore, the court held, the district court had not awarded "appropriate equitable relief" under § 501(a)(3).

In recent years, district courts in this circuit have interpreted *Amara* and *Krohn* to conclude that, notwithstanding *Alexander*, *Mertens* "does not mean that compensatory damages may never be sought." *See, e.g.*, *Teisman v. United of Omaha Life Ins. Co.*, 908 F. Supp. 2d 875, 878 (W.D. Mich. 2012) (quoting *Amara*, 131 S. Ct. at 1880). While the *Teisman* court acknowledged that it was not bound to follow the dicta from *Amara*, it found it to be "the best predictor of how the Supreme Court would rule if directly presented with the issue." *Id.* The

26

court therefore held that "when a fiduciary is involved, compensatory relief is a 'typical equitable remedy' available under § 1132(a)(3)" and that this provision authorized the "make-whole" equitable relief sought by plaintiff because the defendant-employer was a fiduciary. *Id.*

In *Weaver v. Prudential Inc. Co.*, No. 10-438, 2011 U.S. Dist. LEXIS 118152 (M.D. Tenn. Oct. 12, 2011), the court examined the interaction of *Krohn* and *Alexander* in analyzing whether "money damages—such as the life insurance benefits sought by plaintiff"—were recoverable under § 1132(a)(3) against an employer who had misrepresented the terms of a life insurance plan. *Id.* at \*29–30. The court acknowledged that "the result [in *Alexander*] appears to be completely at odds with that in *Krohn*," but concluded that because *Alexander* was unpublished and decided later than *Krohn*, *Krohn* was controlling and the plaintiff could recover "the value of the life insurance benefits she would have been able to recover if she had been correctly informed . . . ." *Id.* at \*37–38 (citing *United States v. Ennenga*, 263 F.3d 499, 504 (6th Cir. 2001) (holding that unpublished decisions are not controlling precedent); *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996) ("The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.")).

The Court agrees that it is bound by the earlier *Krohn* opinion, but also notes that *Amara* appears to have, albeit incidentally and in dicta, harmonized *Krohn* and *Alexander*. In *Amara*, the Court instructed that the *Mertens* defendant's non-fiduciary status was a critical factor in the holding, and left open the possibility that compensatory damages could be recovered from a fiduciary. And in *Alexander*, the defendant was not a fiduciary. Rather, it was held liable for its violation of the ERISA statute (as opposed to a breach of fiduciary duty). By contrast, the

27

defendant in *Krohn* was a fiduciary and was held liable for its breach of fiduciary duty. The posture of this case mirrors *Krohn*, and the Court chooses to follow *Krohn* in this context.

Therefore, if Plaintiffs can establish that Church's breached a fiduciary duty by misrepresenting to Ms. Van Loo that her supplemental coverage election became effective, they can recover compensatory damages from Church's for this breach under § 1132(a)(3). Plaintiffs do not have a claim for denied benefits against Church's under 29 U.S.C. § 1132(a)(1)(B) for the reasons stated in Part III(A) above and therefore cannot obtain "adequate relief" for their injuries under that section. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) ("The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies.").

Plaintiffs have adequately pled a claim for breach of fiduciary duty against Church's and the relief they seek is available under 29 U.S.C. 1132(a)(3). Church's motion to dismiss is denied as to Count II. Reliance's motion will be granted as to Count II

## C. Count III – Equitable Estoppel

Plaintiffs allege that Church's acceptance of Ms. Van Loo's enrollment and premiums, coupled with its knowing failure to inform her of the proof of insurability requirement, merits the application of estoppel to preclude Church's from denying Plaintiffs the full benefit amount under the Plan. (Compl. at ¶¶ 79–92.)

Plaintiffs are correct that equitable estoppel "may be a viable theory in ERISA cases." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998). The Sixth Circuit has articulated the standard for estoppel under ERISA as follows:

(1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to

be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 428–29 (6th Cir. 2006). But the Sixth Circuit does not allow plaintiffs to assert principles of estoppel "to vary the terms of unambiguous plan documents." *Sprague*, 133 F.3d at 404. This is so for two reasons:

When a party seeks to estop the application of an unambiguous plan provision, he by necessity argues that he reasonably and justifiably relied on a representation that was inconsistent with the clear terms of the plan. Moreover, to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves.

*Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003) (citing *Sprague*, 133 F.3d at 404).

Therefore, the Court first turns to the language of the Plan to determine whether it is ambiguous. "The language of a benefit plan is ambiguous if it is subject to more than one reasonable interpretation." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 953 (6th Cir. 2004) (citing *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994)). The Plan provides, in relevant part:

Amounts of insurance over $300,000 are subject to [Reliance's] approval of a person's proof of good health. . . . During an Approved Enrollment period, applications for employees . . . who were previously eligible and are now applying for initial or additional coverage will not require proof of good health for a one level increase in coverage, provided: (1) the application is complete, signed, and received by [Church's] during the Approved Enrollment Period, and (2) the applicant was not previously declined for insurance coverage by us, postponed, had their application withdrawn, or voluntarily terminated their insurance with us. . . . Employees who exceed the combined Basic and Supplemental Life Insurance guarantee issue amount of $300,000 [and] employees and dependent spouses who exceed a one level increase in insurance are subject to our approval of proof of good health and such amounts of insurance will not be effective until approved by us.

(Dkt. 15-2, Ins. Policy, at PageID 221–22.) This language does not provide for any scenario in which an insured could obtain effective coverage over $300,000 without submitting proof of good health for approval by Reliance.[5] *Cf. Papenfus v. Flagstar Bankcorp., Inc.*, 517 F. Supp. 2d 969, 972 (E.D. Mich. 2007) (holding that plan language regarding proof of good health was ambiguous because "[t]he phrase 'as required by Us' seem[ed] to indicate that the Plan administrator will inform the enrollee of what is required"). Nor do Plaintiffs offer their own interpretation of the Plan. (*See* Compl.)

The fact that the plan provision is unambiguous would warrant dismissal of the equitable estoppel claim. *See Marks*, 342 F.3d at 456. But Plaintiffs also allege that Defendants[6] never sent the Plan documents to Ms. Van Loo. This allegation raises the inference that Ms. Van Loo could not be aware of the requirement, unambiguous or otherwise. However, the mere fact that Defendants never mailed the documents does not mean *Sprague* is inapplicable. In fact, the Sixth Circuit has instructed that "[n]o language in *Sprague* suggests that an insurer has an affirmative duty to make . . . its insureds aware of this kind of language" in the equitable estoppel context. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 522 (6th Cir. 2010). Rather, a plaintiff would need to offer evidence that he was "deprived" of access to plan documents in order to avoid *Sprague's* unambiguous language holding because *Sprague* applies to documents "*available to* or furnished to" a plaintiff. *Id.* (citing *Sprague*, 133 F.3d at 404) (emphasis added); *see also Zirnhelt v. Michigan Consol. Gas Co.*, No. 04-CV-70619, 2006 WL 416186, at *4 (E.D. Mich. Feb. 22, 2006) (denying leave to add a claim of equitable estoppel in an ERISA case

---

[5] Even the subsection that relieves employees seeking a one-level increase in coverage from the proof of good health obligation notes that coverage over $300,000 will require proof of good health in order to be effective.

[6] Again, it seems probable that this Count is directed largely at Church's but Plaintiffs imprecisely made allegations against "Defendants." (*See* Compl. at ¶ 82.)

2:14-cv-10604-LJM-DRG   Doc # 33   Filed 12/01/14   Pg 31 of 39   Pg ID 566

where "plaintiff's proposed amended estoppel claim is not premised on requisite ambiguous plan language; plaintiff alleges that she was never provided with any plan documents or summary plan description" (citation and internal quotation marks omitted)). Plaintiffs do not plead such deprivation.

Count III of the Complaint, for equitable estoppel, will therefore be dismissed as to both Defendants for failure to state a claim.

### D.  Count IV – Unjust Enrichment

Plaintiffs next allege a common law claim of unjust enrichment stemming from the denial of the full benefit amount. (Compl. ¶¶ 93–96.) Plaintiffs appear to seek "$314,000 . . . [and] any monetary benefit gained by Defendants in utilizing these funds." (*Id.* ¶ 96.) But Plaintiffs fail to allege any facts that would allow the Court to conclude that either Defendant "gained" monetary benefit "in utilizing the[] funds," instead merely asserting the legal conclusion that "Defendants have been unjustly enriched . . . ." (Compl., at ¶ 95.) Therefore the Court concludes that the claim of unjust enrichment only extends as far as the denied benefits in the amount of $314,000.

Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries" by delineating substantive requirements for employee benefit plans and by "providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (emphasis in original), *quoted in Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). The Sixth Circuit has since recognized that "Congress intended for the judiciary to develop and apply a federal common law to actions premised on the

contractual obligations created by ERISA plans," but that "federal common law is developed under ERISA only in those instances in which ERISA is silent or ambiguous." *Weiner v. Klais & Co.*, 108 F.3d 86, 92 (6th Cir. 1997) (citations omitted).

The Sixth Circuit has held that "creation of a federal common law of unjust enrichment for plan beneficiaries seeking to recover benefits under a plan would be inconsistent with ERISA's terms and policies." *Id.* And in this case, after culling the conclusory factual allegations from the complaint, recovery of benefits is all Plaintiffs seek in this count. But the statute provides a cause of action for this claim under 29 U.S.C. § 1132(a)(1)(B); indeed, Plaintiffs have asserted a claim pursuant to this provision as Count I, which remains against Reliance. (*See* Compl.) Plaintiffs cannot create the possibility of double recovery and circumvent the case law on who is liable under § 502(a)(1) by asserting a duplicative claim under federal common law. *Cf. Weiner*, 108 F.3d at 92 ("Plaintiff essentially seeks the same relief in Count III [for unjust enrichment] as he seeks in Counts I and II, namely the benefits to which he believes he is entitled under the plans. ERISA provides him with a cause of action in § 1132(a)(1)(B)."); *Muse v. IBM*, 103 F.3d 490, 495 (6th Cir. 1996) ("[F]ederal common law is developed under ERISA only in those instances in which ERISA is silent or ambiguous. Plaintiffs' state law claims do not fall into that category; they seek to recover for conduct that falls within the purview of Section 404 of ERISA. Plaintiffs' common law claims are preempted by ERISA and cannot be reasserted as separate claims arising under federal common law.")

The authority cited by Plaintiffs does not overcome this conclusion. First, *Rochow v. Life Insurance Co. of North America*, 737 F.3d 415 (6th Cir. 2013), was vacated upon the grant of a rehearing en banc; therefore, the opinion is no longer binding authority. Next, to the extent that *Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 982

32

F.2d 1006 (6th Cir. 1993), recognized a federal common law claim for unjust enrichment, it was in the limited context of contractual limitations on refunds for mistaken employee contributions to pension plans (as opposed to the benefits those mistaken contributions would have given rise to). The court concluded that "[a] pension fund's refusal to refund contributions paid by mistake is arbitrary unless necessary to the financial soundness of the plan or justified by some other compelling reason." *Id.* at 1017. But Plaintiffs have already received a refund of premiums paid for denied coverage. (Compl. ¶ 49.)

Finally, in *McGuire v. Metropolitan Life Insurance Co.*, 899 F. Supp. 2d 645, 666 (E.D. Mich. 2012), the court allowed an unjust enrichment claim to proceed under federal common law where a fiduciary of a pension plan had brought suit against the insurance company for its alleged failure to remit investment dividends to the plan. The court commented that "courts do not lightly fashion remedies like restitution where other remedies exist," but that cases such as *Whitworth Brothers* "involve[d] attempts to recover mistaken overpayments of premiums or benefits where there was no contractual right to recover." *Id.* As noted above, the rationale of *Whitworth Brothers* does not apply to this case, for Plaintiffs can, and did, assert a claim for the relief they seek under 29 U.S.C. § 1132(a)(1)(B).

Count IV will therefore be dismissed as to both Defendants.

**E. Count V – Breach of Administrator's Duty Under 29 U.S.C. § 1132(c)**

**1. Church's**

Plaintiffs allege that Church's violated 29 U.S.C. § 1132(c) by failing to fulfill plaintiffs' request for "documents evidencing that . . . Defendants provided Ms. Van Loo with an EIF form or requested that she complete an EIF form." (Compl. ¶¶ 101–02.) Because Church's had no

33

statutory obligation to provide the information that Plaintiffs requested, it is not a proper defendant to Count V.

Under 29 U.S.C. § 1132(c)(1)(B), a plan administrator's obligation to provide documents to participants and beneficiaries is limited to summary plan descriptions, § 1021(a); annual plan funding notices, § 1021(f); and annual statements, § 1024(b)(3). Plaintiffs' claim does not involve any of these documents.

By contrast, 29 U.S.C. § 1133 imposes duties on the plan, rather than the plan administrator, to "provide adequate notice" to a participant or beneficiary of a claim's denial and the reasons for such denial, and to "afford a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." The section's accompanying regulations impose duties on the plan to fulfill a claimant's request for "all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503–1.

It is possible the documents Plaintiffs requested fall under this section. If so, Plaintiffs would only have stated a claim under § 1133 against the Plan, not under § 1132(c) against Church's, the plan administrator. *See VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992) ("[C]ourts have held that a violation of section 1133 by the plan administrator does not impose liability on the plan administrator pursuant to section 1132(c), because duties of the '*plan*' as stated in section 1133 are not duties of the '*plan administrator*' as articulated in section 1132(c)." (citing *Groves v. Modified Ret. Plan*, 803 F.2d 109, 116 (3d Cir. 1986)); *see also Walter v. Int'l Ass'n of Machinists Pension Fund*, 949 F.2d 310 (10th Cir. 1991)), *cited with approval in Cultrona v. Nationwide Life Ins. Co.*, 936 F. Supp. 2d 832, 853 (N.D. Ohio 2013) (concluding that the plan administrator cannot be penalized under § 1132(c)

34

for a violation of 29 C.F.R. § 2560.503–1). Church's, as plan administrator, had no obligation to provide Plaintiffs with the evidence Reliance used to make its claim determination.

While the Court finds that Plaintiffs have failed to state a claim against Church's for violation of 29 U.S.C. § 1132(c), the documents requested by Plaintiffs will clearly be discoverable in this lawsuit pursuant to Federal Rule of Civil Procedure 26.[7]

### 2. Reliance

Plaintiffs cannot recover statutory penalties from Reliance under 29 U.S.C. § 1132(c). "It is well established that only plan administrators are liable for statutory penalties under § 1132(c)." *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002). And "an insurance company acting as claims administrator is not a plan administrator and cannot be held liable for statutory penalties for failure to comply with an information request." *Gillespie v. Liberty Life Assur. Co.*, No. 10-388, 2011 U.S. Dist. LEXIS 13295, at *6–7 (W.D. Mich. Feb. 10, 2011) (citations omitted) (collecting cases).

---

[7] The Court also notes that ERISA did require Church's to inform Ms. Van Loo about the good health requirement, although it does not provide a cause of action for failure to provide documents to that effect. 29 U.S.C. § 1021(a)(1) requires a plan administrator to furnish participants and beneficiaries with a summary plan description. 29 U.S.C. § 1022(b) requires that summary plan description to include, *inter alia*, "the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." The Summary Plan Description here lacks any information regarding the requirement that Reliance approve a person's good health for amounts of insurance over $300,000. (*See* Dkt. 12-2, Summary Plan Description.) But ERISA does not provide penalties for violations of § 1022(b). *See Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir. 1989) ("The failure to comply with ERISA's procedural requirements is not ordinarily a basis for substantive relief."); *see also Lewandowski v. Occidental Chemical Corp.*, 986 F.2d 1006, 1009 (6th Cir. Mich. 1993) ("An employer's procedural violations of ERISA entitle employees to monetary relief only in exceptional cases . . . . Most courts that have considered the issue have held that the employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted." (quoting *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991)).

Plaintiffs argue that Reliance acted as the *de facto* plan administrator when it communicated with Ms. Van Loo regarding the EIF requirement. (Dkt. 25, Pl.'s Resp. Br., at 24.) This argument has twice been rejected by the Sixth Circuit. *Gore*, 477 F.3d at 843; *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001); *see also Gillespie*, 2011 U.S. Dist. LEXIS 13295, at *8–9 (explaining that in the context of claims under § 1132(c), the "*de facto* plan administrator" argument "would expand the definition of plan administrator under ERISA without statutory warrant").

The Court will not, as Plaintiffs urge, follow *SLF No. 1 v. United Healthcare Services*, No. 12-00070, 2014 U.S. Dist. LEXIS 15618, at *17–19 (M.D. Tenn. Feb. 7, 2014), to depart from clear Sixth Circuit precedent. In that case, while acknowledging that only plan administrators can be liable under 1132(c), the court reasoned:

> the Sixth Circuit has also indicated that dismissal of a 29 U.S.C. §§ 1132(c) is not appropriate even though the defendant being sued is not the designated plan administrator where there is a question as to whether the defendant had been administering the plan *and* where, despite repeated requests for plan documents, plaintiff was never informed that it was contacting the wrong party for that information.

*SLF No. 1*, 2014 U.S. Dist. LEXIS 15618 at *19 (emphasis added) (citing *Minadeo v. ICI Paints*, 398 F.3d 751, 759 (6th Cir. 2005)). Plaintiffs here do not allege that Reliance failed to inform them that they sought information from the wrong party, nor do they offer any analysis on this aspect of the holding in *SLF No. 1*. In fact, they omit that portion of the court's reasoning from their brief.

Moreover, the Sixth Circuit authority cited in *SLF No. 1* and *Minadeo*, involved an administrative record that did not "adequately explain[] the relationship between [the defendant] and the [Pension Committee.]" 398 F.3d at 759. The Sixth Circuit therefore reversed the district court's grant of summary judgment and remanded for further factual determination as to whether

36

the defendant was, in fact, the plan administrator. Only then would the district court "have discretion to impose fines pursuant to § 1132(c) of ERISA." *Id.* By contrast, the record in this case is clear: Church's was the plan administrator, and Reliance was the claims administrator.

Plaintiffs next argue that a regulation, 29 C.F.R. 2560.501-1(h)(2)(iii), provides a basis for the Court to impose penalties on Reliance. Subsection (h)(2)(iii) incorporates another subsection, (m)(8), by reference. Plaintiffs claim that Reliance violated (m)(8), and therefore (h)(2)(iii), by "refus[ing] to timely provide Plaintiffs with the documents upon which it based its denial of their appeal." (Compl. at ¶ 105.) This regulation "implements the 'full and fair review' requirement of § 1133 by providing that the claims procedure of a benefits plan must provide a claimant, 'upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.'" *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 735 (6th Cir. 2008).

The Sixth Circuit and "other circuits have rejected the argument that § 1132(c) statutory damages are available for violations of regulations implementing § 1133." *Id.* at 735. This is because "a plan administrator cannot violate § 1133 and thus potentially incur liability under § 1132(c) because § 1133 imposes requirements for the benefits plan rather than obligations on the plan administrator." *Id.* (quoting *Stuhlreyer v. Armco, Inc.*, 12 F.3d 75, 79 (6th Cir. 1993)). "29 C.F.R. § 2560.503-1(h)(2)(iii) clearly imposes requirements on the plan, not the plan administrator," and therefore Plaintiffs cannot enforce it against Reliance. *Id.* at 736.

Plaintiffs remind the Court that this lawsuit is brought not only against Reliance, but also against the Plan itself. But this has no bearing on Plaintiffs' ability to collect statutory penalties from *Reliance* under § 1132(c).

## F.  Demand for Jury Trial

As part of its Motion to Dismiss, Church's seeks to strike Plaintiff's jury demand under Fed. R. Civ. P. 12(f) on the ground that "none of Plaintiffs' ERISA claims entitle[] them to a jury trial." (Church's Mot. to Dismiss at 23.) Reliance asserts the same request. (Reliance Mot. to Dismiss at 20.) Plaintiffs advise that they "do not oppose Church's motion to strike their jury demand." (Resp. at 5.)

Accordingly, the Court will strike Plaintiffs' jury demand.

## IV. CONCLUSION

For the reasons stated, the Court will dismiss the claims against Church's in Counts I, III, IV, and V of the Complaint and the claims against Reliance in Counts II, III, IV, and V of the Complaint. The Court finds that Defendant Church's is not a proper defendant to Plaintiffs' claim under 29 U.S.C. § 1132(a)(1)(B), and Reliance did not move for dismissal on Count I. Reliance did not act in a fiduciary capacity with respect to mailing the EIF, and therefore Plaintiffs have failed to state a claim for fiduciary breach against it. Plaintiffs' common law claims are preempted by ERISA or otherwise fail to state a claim upon which relief can be granted, a conclusion that demands dismissal as to both Defendants. Church's had no duty to provide Plaintiffs with the documents that Plaintiffs requested, and Reliance is not liable for statutory penalties for failure to comply with an information request. Finally, there is no right to a jury trial in actions brought under ERISA § 502.

With respect to Count II, however, Plaintiffs have adequately pled that Church's acted as a fiduciary when making misrepresentations to Ms. Van Loo concerning her coverage, and the relief they seek is available under 29 U.S.C. 1132(a)(3).

38

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Church's Motion to Dismiss Counts I through V of the Complaint and **GRANTS** Church's Motion to Strike the Jury Demand. The Court **GRANTS** Defendant Reliance's Motion to Dismiss Counts II through V of the Complaint.

**IT IS SO ORDERED.**

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  December 1, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 1, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson

39