UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD AND HARRIET VAN LOO, | |
| Plaintiffs, | Case No. 14-cv-10604 |
| | Honorable Laurie J. Michelson |
| v. | Magistrate Judge David R. Grand |
| CAJUN OPERATING COMPANY d/b/a CHURCH'S CHICKEN, a Delaware Corporation, RELIANCE STANDARD LIFE INSURANCE COMPANY GROUP LIFE POLICY (Policy Number GL 140042), an employee welfare benefit plan, and RELIANCE STANDARD LIFE INSURANCE COMPANY, an Illinois Corporation, | |
| Defendants. | |
| CAJUN OPERATING COMPANY d/b/a CHURCH'S CHICKEN, a Delaware Corporation, and THE CHURCH'S CHICKEN WELFARE BENEFITS PLAN, | |
| Cross-Plaintiffs, | |
| v. | |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, an Illinois Corporation, | |
| Cross-Defendant. | |

**OPINION AND ORDER GRANTING CROSS-DEFENDANT RELIANCE'S MOTION TO DISMISS DEFENDANT CHURCH'S' CROSS-COMPLAINT [41], DENYING CROSS-DEFENDANT CHURCH'S' MOTION TO AMEND THE CROSS-COMPLAINT [50], AND DENYING AS MOOT CROSS-DEFENDANT RELIANCE'S MOTION TO STAY DISCOVERY [62]**

Donna Van Loo was an employee of Cross-Plaintiff Cajun Operating Company d/b/a Church's Chicken ("Church's"). Church's provided life insurance to Van Loo and its other employees through Cross-Defendant Reliance Standard Life Insurance Company. The Policy required that insureds submit an evidence of insurability form ("EIF") in order for certain amounts of insurance to be effective. But Van Loo never submitted an EIF, and so when her parents, Plaintiffs Donald and Harriet Van Loo, submitted a claim after her death, Reliance denied benefits in excess of the guaranteed-issue amount.

Alleging that their daughter was never informed that to qualify for supplemental coverage over $300,000, she had to submit an EIF certifying the state of her health at the time her coverage crossed the $300,000 threshold, Plaintiffs sued Church's and Reliance, asserting various causes of action under the Employee Retirement Income Security Act ("ERISA"). After initial motion practice, the Court dismissed all but a denial-of-benefits claim against Reliance and a fiduciary-breach claim against Church's. *See Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007 (E.D. Mich. 2014). Shortly thereafter, Church's filed a cross-claim against Reliance, asserting that Reliance caused Van Loo's failure to submit the EIF and, in turn, the underlying suit against Church's. Now before the Court are Reliance's Motions to Dismiss the Cross Claim and to Stay Discovery, and Church's' Motion to Amend the Cross Claim. After careful consideration of the briefs and thorough review of the pleadings, the Court finds that oral argument will not aid in resolving the pending motions. See E.D. Mich. LR 7.1(f)(2).

For the reasons set forth below, the motion to amend will be denied, the motion to dismiss will be granted, and the motion to stay will be denied as moot.

## I.  PROCEDURAL HISTORY AND ALLEGATIONS OF THE CROSS-COMPLAINT

The Court first describes the procedural posture of the case and then recites the allegations of the proposed amended cross-complaint, taking the allegations as true and drawing reasonable inferences in favor of Church's.

### A.

The Van Loos' breach-of-fiduciary-duty claim against Church's is that Church's "misrepresent[ed] Ms. Van Loo's eligibility for Supplemental Life Insurance Benefits under the Group Life Policy . . . ." *Id.* at 1016. In essence, that Church's communications and dealings with Ms. Van Loo led her to reasonably believe she was covered for supplemental life insurance despite the lack of an EIF. *Id.* at 1019.

Following the ruling on the Van Loos' Complaint, in December 2014, Church's filed a cross-claim against Reliance, on behalf of itself and the "Church's Chicken Welfare Benefits Plan [the "Plan"]." (Dkt. 38, Cross-Compl.) Church's alleges that "[b]y way of a delegation of responsibility from CHURCH'S[,] expressly accepted by RELIANCE in 2010, RELIANCE became responsible for the Evidence of Insurability Forms ("EIF") requirement for many PLAN participants, including Donna Van Loo." (Cross-Compl. at ¶ 7.) The EIF itself "directed PLAN participants to return the form to RELIANCE." (*Id.* at ¶ 9.) Church's says that once Reliance accepted responsibility for EIFs, Reliance should have known that Church's would rely "on RELIANCE to track the return of those forms and would rely on RELIANCE to communicate to CHURCH'S any changes in benefits required under the PLAN as a result of the EIF." (*Id.* at ¶ 9.) Church's says that only after Reliance denied Plaintiffs' claim did it realize that Van Loo needed an EIF for her coverage level to become effective. (*Id.* at ¶ 15.)

3

Based on these allegations, Church's has asserted against Reliance claims for breach of fiduciary duty, misrepresentation, and indemnification. (*See* Cross-Compl.) Reliance filed a motion to dismiss the cross-complaint. (Dkt. 41, Mot. to Dismiss.) Shortly thereafter, Church's filed a motion to amend the cross-complaint. (Dkt. 50, Mot. to Amend.) Church's seeks to amend the cross-complaint to add allegations regarding a "Plan Administrator's Guide" issued by Reliance and relevant omissions regarding the EIF therein, and also seeks to assert a new interpretation of the EIF requirement as stated in the Policy. (*Id.* at 3.) As noted above, Reliance opposes the motion to supplement the allegations as untimely and futile. So the Court will consider whether the allegations of the amended cross-complaint are sufficient to withstand a motion to dismiss.

**B.**

The Policy's guaranteed-issue amount is the crux of this dispute. In the proposed amended cross-complaint, Church's asserts that "the POLICY states that elections of '[a]mounts of' Supplemental Life insurance 'over $300,000 are subject to [RELIANCE's] approval of a person's proof of good health.'" (Dkt. 50-2, Proposed Am. Cross-Compl. at ¶ 14.) Moreover, the Policy states that if a proposed election "would result in an increase in the amount of Supplemental insurance of 10% or more," proof of good health would be required. (*Id.* at ¶ 16.) Reliance issued a "Plan Administrator's Guide" to Church's, but the Guide "does not address who is responsible for administering any EIF required under the POLICY." (*Id.* at ¶¶ 22–23.)

Employees were to select their own level of coverage under the Policy. "Subject to its terms, the PLAN allowed eligible CHURCH'S employees, including Van Loo, to elect basic life and accidental death and dismemberment insurance ("Basic Life") as well as supplemental life insurance benefits ("Supplemental Life")." (*Id.* at ¶ 8.) In 2007, with an annual salary of

4

$100,000, Van Loo elected Basic benefits and Supplemental benefits in an amount equal to two times her salary. (*Id.* at ¶ 9.) In 2008, with an annual salary of $100,000, Van Loo elected Basic and Supplemental benefits in an amount equal to three times her salary. (*Id.* at ¶ 10.) Church's asserts that '[b]ecause Van Loo's elections for 2007 through 2010 neither sought Supplemental Life insurance benefits greater than $300,000, nor resulted in those benefits increasing by 10% or more than the preceding year, none of the POLICY's EIF provisions were triggered." (*Id.* at ¶ 17.)

The crux of the proposed amended cross-complaint is Van Loo's 2011 election. That year, Van Loo increased her Supplemental election to "4x salary." (*Id.* at ¶ 18.) Church's contends that it recognized at this time that Van Loo may have triggered the EIF requirement. (*Id.* at ¶ 20.) Thus, Church's "ask[ed] [Reliance] to administer any EIF requirement for Van Loo and other PLAN participants." (*Id.*) Church's also says that it wanted Reliance to take on this task because there had been "unclear communication" regarding the EIF requirement. (*Id.* at ¶ 21.) Specifically, the Guide did not address who would be responsible for administering the EIF requirement, how it should be administered, or what effect the lack of an EIF would have. (*Id.* at ¶¶ 24–25.)

Church's alleges that Reliance "expressly accepted responsibility for administering the EIF requirement for Van Loo and other PLAN participants." (*Id.* at ¶ 26.) But Reliance "did not track EIF submissions or tell CHURCH'S or Van Loo that it never received [an] EIF from Van Loo." (*Id.* at ¶ 29.) Relying on Reliance's acceptance of responsibility for the EIF requirement, Church's "accepted and transmitted to RELIANCE Van Loo's premium payments and benefit elections, unaware that RELIANCE would later deny Plaintiffs' claim." (*Id.* at ¶ 31.)

After Van Loo's death, Plaintiffs Donald and Harriet Van Loo submitted a claim on the Policy in the amount of $614,000—$125,000 in Basic Life and $489,000 in Supplemental Life, or approximately four times Van Loo's most recent annual salary of $122,200. (*Id.* at ¶ 33.) Reliance denied the claim in part, citing the EIF provisions. (*Id.* at ¶ 35.) Stating that there was no EIF on file for Van Loo, Reliance tendered only $300,000—$125,000 in Basic Life and $175,000 in Supplemental Life. (*Id.* at ¶ 37.) Reliance affirmed this decision on appeal. (*Id.* at ¶ 42.) The underlying lawsuit ensued.

Based on the foregoing, the proposed amended cross-complaint asserts four counts against Reliance: breach of fiduciary duty for failure to administer EIF (Count I), breach of fiduciary duty for failure to pay claim (Count II), breach of fiduciary duty based on misrepresentation (Count III), and indemnification (Count IV).

First, Church's asserts that Reliance accepted responsibility for administering the EIF requirement and thereby became a fiduciary for that purpose and that Reliance breached that duty by failing to send Van Loo an EIF, failing to advise Church's that Van Loo needed an EIF but had not submitted one, and failing to tell Church's to adjust Van Loo's premium. (*Id.* at ¶¶ 45–49.) Worse, says Church's, Reliance denied in part the Van Loos' claim knowing that it was Reliance's omission that caused Van Loo not to submit an EIF. (*Id.* at ¶ 51.)

Second, Church's asserts that even if Reliance properly denied the Van Loos' claim based on their daughter's failure to submit an EIF, her last effective election of supplemental coverage (that is, her last election before her coverage triggered the EIF requirement) was for three times her annual salary in 2010. (*Id.* at ¶ 57.) Yet Reliance only issued $175,000 in supplemental benefits, a decision that, according to Church's, was wrongful. (*Id.* at ¶ 60.)

6

Third, Church's says that Reliance failed to "communicate all material information regarding benefits provided under the PLAN known to it by virtue of its fiduciary responsibilities to avoid injury to the PLAN and PLAN participants." (*Id.* at ¶ 64.)

Last, "[t]o the extent that the Van Loo Plaintiffs are not entitled to the supplemental death benefit . . . but they are found to be entitled to equitable damages because Ms. Van Loo was not properly appraised of the EIF requirement and/or reasonably believed that the requirement had been waived," Church's seeks indemnification from Reliance. (*Id.* at ¶ 71.)

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a case warrants dismissal if it fails "to state a claim upon which relief can be granted." When deciding a motion under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but the Court need not accept as true legal conclusions or unwarranted factual inferences. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not a "probability requirement," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In addition to the Complaint, the Court may consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely given when justice so requires." But a court may deny leave based on undue delay, bad faith, dilatory motive, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Sixth Circuit requires "at least some significant showing of prejudice to deny a motion to amend based solely upon delay." *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2008) (citing *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (per curiam)). Here, Reliance argues that the proposed amended cross-complaint is both "untimely and futile." (Dkt. 53, Resp. to Mot. to Amend at 8.) "When a district court denies a motion to amend because it concludes that the amendment would be futile, the basis for its denial of the motion is its purely legal conclusion that the proposed amendment could not withstand a Rule 12(b)(6) motion to dismiss. . . . As a result, the dispositive question in this case is whether plaintiffs' [proposed amended cross-complaint] contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014) (citations and internal quotation marks omitted).

## III. DISCUSSION

Reliance has incorporated its arguments in its motion to dismiss into its opposition to Church's motion to amend the cross-complaint. (Mot. to Amend Resp. Br. at 6.) Reliance asserts several general challenges to the proposed amended cross-complaint: it argues that the Plan lacks statutory standing, that the Plan has not been properly joined, and that relief for the counts at issue will not inure to the benefit of the Plan. As to the individual counts, Reliance asserts that Church's has not sufficiently pled that it was acting in a fiduciary capacity, that the claims at issue do not involve loss to the Plan, and that claims for indemnification between co-fiduciaries are unavailable under ERISA.

**A. Standing**

Reliance first argues that the Plan lacks standing because it is not authorized to bring action under 29 U.S.C. § 1132(a)(2) or (a)(3). (Mot. to Dismiss at 7.) It is true that only the Secretary of Labor, a plan participant, beneficiary, or fiduciary may bring action under Section 1132(a)(2), and that only a plan participant or fiduciary may bring action under Section 1132(a)(3). However, under Sixth Circuit precedent, "The Plan, as the party before the court, necessarily includes those who must act for the Plan to administer it and to effectuate its policies." *Saramar Aluminum Co. v. Pension Plan for Employees of Aluminum Indus. & Allied Indus. of Youngstown Ohio Metro. Area*, 782 F.2d 577, 581 (6th Cir. 1986). Therefore, since Church's is a Plan fiduciary, "the Plan has filed suit as a fiduciary, as it had authority to do, in its [cross-claim.]" *Id.*

Reliance cites a Ninth Circuit case to the contrary. But that case specifically stated that it was taking a different route than that of the Sixth Circuit:

> We have previously held that an ERISA plan itself does not have standing to sue under § 502(a) of ERISA because it is not a plan participant, beneficiary or fiduciary. The Trust Funds urge and adopt the Sixth Circuit's approach to suits brought by plans under ERISA. In *Saramar*, the Sixth Circuit concluded that '[t]he Plan, as the party before the court, necessarily includes those who must act for the Plan to administer it and to effectuate its policies.' Because the Plan's administrators had discretionary control over the Plan, the court determined that 'the Plan as a party, then, comes under the ERISA definition of a fiduciary.' Under [Ninth Circuit precedent], however, we are not free to follow the Sixth Circuit and we decline to do so.

*Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 983 (9th Cir. 1999). "). "Unlike [the] Ninth Circuit, however, this Court is not free to decline to follow the Sixth Circuit." *Chaness & Simon, P.C., v. Simon*, 241 F. Supp. 2d 774, 779 (E.D. Mich. 2003) (discussing the standing-related holdings of *Saramar* and *Local 159*).

9

Reliance also argues that "the facts in *Saramar* make clear that [the holding applies] only in the context of actions for delinquent benefit payments or other plan asset recovery actions." (Reply Br. at 3.) In a case like this one, where the cross-claim is "the attempt of a plan administrator to recover from an insurance company insuring the benefits afforded by the Plan for damages it has to pay in connection with the faulty administration of its benefit Plan," Reliance says that *Saramar* does not apply. (*Id.*)

Reliance's interpretation of the *Saramar* holding is strained. In *Saramar*, an employer-plan participant filed an action against a jointly-sponsored employee benefits plan and the plan's administrators, challenging an assessment that the administrators had imposed on it. *Saramar*, 782 F.3d at 579. After removal from state court, the plan filed a counterclaim against the employer for certain delinquent amounts. *Id.* Neither party challenged the removal and the district court found in favor of the employer. *Id.* On appeal, one issue before the Court was whether the district court had jurisdiction to decide the counterclaim, which the Court construed as being brought pursuant to 29 U.S.C. § 1132(e)(1). *Id.* at 581. Citing ERISA's definition of a fiduciary and noting that the Plan "is administered generally by its 'Administrative Board,'" who were fiduciaries under the statute, the Court concluded that the Plan had sued as a fiduciary and therefore had standing under the statute. *Id.* Thus, the Court based its conclusion on ERISA's definition of a fiduciary and the structure of the Plan administration—not, as Reliance claims, on the fact that the lawsuit was an asset recovery action. And Reliance has not cited, and the Court has not uncovered, any cases limiting the *Saramar* holding on this basis.

Thus, the Court finds that the Plan has standing to sue.

**B. Joinder**

Reliance next argues that the Plan was not properly joined as a party to the cross-complaint. When Plaintiffs filed their Complaint, they named Church's, Reliance, and "RELIANCE STANDARD LIFE INSURANCE COMPANY GROUP LIFE POLICY (Policy Number GL 140042), an employee welfare benefit plan" as Defendants. (Dkt. 1, Compl.) Church's' proposed amended cross-complaint names as cross-plaintiffs Church's and "THE CHURCH'S CHICKEN WELFARE BENEFITS PLAN." (Am. Compl.) The parties appear to agree that "RELIANCE STANDARD LIFE INSURANCE COMPANY GROUP LIFE POLICY (Policy Number GL 140042), an employee welfare benefit plan" and "THE CHURCH'S CHICKEN WELFARE BENEFITS PLAN" are the same party. (Mot. to Dismiss at 8; Resp. to Mot. to Dismiss at 6.)

Thus, it appears to the Court that the Plan is already a party to the action by virtue of the underlying Complaint—the problem is merely that Church's did not use the same name in the caption of its cross-complaint. And there has been no motion practice regarding the propriety of the Plan as a defendant to the underlying Complaint, nor any motion for default judgment given that the Plan has not responded to the underlying Complaint, nor has the Court raised or ruled on these matters. The other issue is that there has been no appearance filed on behalf of the Plan. Church's argues that counsel for Church's "has appeared on behalf of the Plan . . . by filing the cross-complaint on its behalf." (Resp. to Mot. to Dismiss at 6.) The Court accepts this representation; however, the docket does not reflect that Church's' counsel also represents the Plan.

Still, the Court does not believe that misjoinder is a sufficient basis to dismiss the Plan as a cross-plaintiff in this instance.

11

### C.  Benefit of the Plan

Reliance's last general argument for dismissal is that "Section 1109 provides relief only to the plan," and thus, Church's, as plan *administrator*, cannot assert claims under 29 U.S.C. § 1132(a)(2). (Mot. to Dismiss at 9.) The Court agrees.

Section 1132(a)(2) authorizes civil actions "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." In turn, section 1109 provides,

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

The Supreme Court examined these two sections of ERISA in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985). The question presented in that case was whether "a fiduciary to an employee benefit plan may be held personally liable to a plan participant or beneficiary for extra-contractual compensatory or punitive damages caused by improper or untimely processing of benefit claims." *Id.* at 136. In holding that § 1109(a) did not provide for such a remedy, the Court stated that "the entire text of [§ 1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself." *Id.* at 144. Indeed, "[a] fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142.

The Court agrees with Reliance that *Russell* means that Church's has no standing to bring suit under section 1132(a)(2) because, should Church's recover, any benefit would inure to Church's and not to the Plan. (*See* Mot. to Dismiss at 10.) Indeed, in the case Church's cites, *In re AEP ERISA Litigation*, 327 F. Supp. 2d 812, 820 (S.D. Ohio 2004), the district court allowed Plan beneficiaries to sue on behalf of the Plan where "The Complaint ma[de] clear that Plaintiffs [were] suing on behalf of the Plan, seeking to recover losses suffered by it, such that any recovery would go to the Plan." The proposed amended complaint does not make such a showing. First, the damages alleged appear to refer to Church's rather than the Plan: "As a result [of Reliance's alleged breach of fiduciary duty], CHURCH'S has been named as a defendant in a lawsuit brought by Plaintiffs for the supplemental death benefit that RELIANCE has denied." (Am. Compl. at ¶ 61.) Second, the remaining claim against Church's in the underlying suit is a claim for breach of fiduciary duty. Such a claim, if proved, would be paid out of Church's' general assets in its capacity as the employer-plan sponsor, not out of plan assets— indeed, Church's does not allege damages to the *Plan* as a result of the underlying suit.

Therefore, insofar as the proposed amended complaint asserts claims under 29 U.S.C. § 1132(a)(2) by Church's, those claims are futile and will be dismissed.

### D.  The EIF Requirement

Church's' fiduciary-breach claims in Counts I and II hinge on its interpretation of the EIF requirement. The relevant statutory section, 29 U.S.C. § 1132(a)(3), allows claims

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Thus, Church's appears to seek "other appropriate equitable relief" in order "to redress [a] violation" of the "terms of the plan." The Policy is part of the record, as attached to Church's'

13

Motion to Dismiss the Complaint (Dkt. 12), and both Reliance and Church's quoted the relevant language in their briefing. The Requirement (and the Policy language surrounding the requirement) reads as follows:

> *AMOUNT OF INSURANCE*:
>
> Basic Life and Accidental Death and Dismemberment:
>
> > CLASS 1: One (1) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $200,000.
> >
> > CLASS 2: $20,000.
>
> Supplemental Life (Applicable only to those Insureds who elect Supplemental coverage and are paying the applicable premium):
>
> > CLASS 1: Choice of: One (1), Two (2), Three (3), Four (4) or Five (5) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $750,000.
> >
> > CLASS 2: Choice of: $20,000, $40,000, $60,000, $80,000 or $100,000.
>
> *Amounts of insurance over $300,000 are subject to our approval of a person's proof of good health.* However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF INDIVIDUAL INSURANCE) will be at no expense to us. . . .

 (Dkt. 12-3, Policy, at PageID 111 (emphasis added).)

The parties appear to agree that if a breach occurred, it occurred when Van Loo surpassed the guaranteed-issue threshold without having been advised of the EIF requirement. But *when* this event occurred depends on how the Policy is interpreted. Church's says that it occurred in 2011, after Reliance assumed responsibility for the EIF requirement, because the $300,000 threshold (for "amounts of insurance") applies to Supplemental Life benefits alone. (Mot. to Amend at 3; Am. Cross-Compl. at ¶ 17.) Reliance says it occurred in 2008, before it assumed responsibility for the EIF requirement, because "Church's allegations that the proof of good health requirement is only tied to the supplemental life insurance coverage electable under the

Policy are simply wrong and contrary to the plain language of the Policy." (Dkt. 53, Resp. to Mot. to Amend at 4–5.) So the question is whether the $300,000 threshold applies to the total amount of insurance (Reliance's interpretation) or only to the Supplemental Life coverage (Church's.)

The parties appear to be in agreement that because the insurance contract was issued in Georgia, Georgia law governs. (*See* Mot. to Amend Resp. at 7 n.1; Mot. to Amend Reply at 5 (citing Georgia law)). Indeed, the Policy itself provides, "The Policy is delivered in Georgia and is governed by its laws." (Policy at PageID 107.) However, the Sixth Circuit has directed that where "the Plan is governed by ERISA, we apply federal common law rules of contract interpretation in making our determination." *Perez v. Aetna Life Insurance Co.*, 150 F.3d 550, 556 (6th Cir.1998). Under these principles, the Court "interprets the Plan's provisions according to their plain meaning, in an ordinary and popular sense. Based on this plain meaning analysis, this Court gives effect to the unambiguous terms of the contract." *Univ. Hospitals of Cleveland v. S. Lorain Merchants Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir. 2006). This is not a departure from Georgia contract law. *See, e.g.*, *State Farm Fire & Cas. Co. v. Goodman*, 576 S.E.2d 49, 51 (Ga. Ct. App. 2002) ("[W]hen the words in an insurance policy are plain and obvious, they must be given their literal meaning. Further, insurance contracts are interpreted by ordinary rules of contract construction . . . ." (citations omitted)).

The Court finds that the provision at issue is not ambiguous and that Reliance's reading is the correct one. The key phrase is "Amounts of insurance over $300,000 are subject to our approval of a person's proof of good health." (Policy at PageID 111.) In turn, "Amount of insurance" is defined under the Schedule of Benefits, and that definition clearly includes both "Basic Life and Accidental Death and Dismemberment" and "Supplemental Life," as set forth in

15

that section. (*Id.*) That is, the Policy has a specific section titled "Amount of Insurance." The "amount of insurance" section includes "Basic Life and Accidental Death and Dismemberment" and "Supplemental Life." Thus, "amount of insurance" clearly refers to the sum of the insured's Basic and Supplemental benefits. That the phrase "amounts of insurance" rather than "supplemental life" is used in the sentence at issue is telling given that both terms are defined in the Schedule of Benefits section. For these reasons, the Court finds that the EIF requirement is applicable to the total amount of insurance purchased by an insured, rather than merely the supplemental coverage purchased.

So the question becomes: when did the total amount of insurance purchased by Van Loo exceed $300,000? According to the Cross-Complaint, Van Loo elected (1) Basic Life benefits and (2) Supplemental Life benefits at three times her annual salary of $100,000 in 2008. Thus, her "amount of insurance" consisted of her Basic Life election plus $300,000 in Supplemental Life. Regardless of whether Van Loo elected Class 1 ($100,000) or Class 2 ($20,000) (it is unclear from the proposed amended cross-complaint), she would have crossed the guaranteed issue threshold of $300,000 at that time. Thus, it is clear that the operative time frame for a fiduciary breach was 2008, not 2011, because the Policy required Van Loo to submit an EIF at that point in time. And the Court agrees with Reliance's assertion that "Church's was already 3 years late in providing the [EIF]" by the time Reliance undertook to mail EIF forms. (Mot. to Dismiss at 14.)

Indeed, based on the Policy language, the purpose of the EIF appears to be to allow Reliance to evaluate and approve plan participants before guaranteeing amounts of insurance over $300,000 as a matter of risk management. *See, e.g.*, *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 718 (8th Cir. 2014) ("MetLife has an interest in not allowing those who may be very ill

16

from taking out a large life insurance policy shortly before death. Evidence of insurability allows MetLife to scrutinize certain policy selections before approving an untimely policy request."). Reliance had to make this determination in 2008, the first time Van Loo's elections pushed her coverage over $300,000. What happened in 2011 is simply not relevant to the fiduciary breach analysis under the plain meaning of the Policy. This is especially so when the Policy does not contemplate a new EIF every time an insured elects coverage over $300,000; rather, the EIF is only required the first time such an election is made. And the proposed amended cross-complaint is clear that Reliance did not undertake responsibility for the EIF requirement (regardless of whether this made Reliance a fiduciary) until 2010. *See* 29 U.S.C.A. § 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.").

Accordingly, the Court concludes that the breach occurred in 2008, when Van Loo crossed the $300,000 threshold without being informed that she needed to submit an EIF.[1] Thus, it is unnecessary to decide whether Reliance acted pursuant to a proper delegation of fiduciary capacity in 2010 because by that point, the breach had occurred and the damage was done. It follows that Reliance is not liable for a breach of fiduciary duty to Van Loo and is not liable to Church's with regard to Church's being named as a defendant in the underlying lawsuit.

---

[1] The Court notes that Van Loo may have, at some point between 2010 and 2011, received a salary increase from $100,000 to $122,200. (Am. Cross-Compl. at ¶ 33.) In turn, this may have increased her supplemental coverage by over 10%. If that is the case, she likely would have triggered the need for another EIF based on the Policy provision stating that if "a change of Earnings would result in an increase in the amount of Supplemental insurance of 10% or more . . . then proof of good health will be required." (Am. Cross-Compl. at ¶ 16.) But from the allegations and briefing, the Court does not understand this to be the basis of Church's breach of fiduciary claim against Reliance—instead, it appears that the basis is Church's' interpretation of the $300,000 threshold as it relates to the Supplemental Life coverage. To the extent Church's claims against Reliance are based on the need for an additional EIF in 2011 pursuant to the 10% increase provision (which would apply only to the 2011 election), Church's may seek to file a new cross-complaint to that effect.

Accordingly, Counts I and II are futile and will be dismissed.

### E. Count III

In Count III, Church's alleges that, in the Reliance Plan Guide issued to Church's, Reliance "recklessly or negligently failed to communicate . . . regarding the EIF requirement", causing Church's to administer the EIF requirement based on incorrect or incomplete information. Reliance says that this claim is futile because ERISA's fiduciary breach provisions are "based on fiduciaries owing duties to the participants and beneficiaries of a plan or the plan as a whole. Those duties do not flow from one fiduciary to other fiduciaries, such as from the claim review fiduciary to the plan administrator[.]" (Resp. to Mot. to Amend at 8.)

First, it appears that Church's, in effect, seeks contribution and/or indemnification from Reliance in the event that Church's is held liable for the fiduciary breach claim against it. Such a claim is not cognizable between co-fiduciaries, as will be explained in further detail below. Second, the claim is belied by the allegations of the Complaint. Church's does not allege that it was not provided with a copy of the Policy; rather, it states that the Plan Administrator's Guide was unclear or confusing regarding the EIF requirement. Yet, Church's alleges that it had "recognized th[e] possibility" that Van Loo had triggered the EIF requirement *before* asking Reliance to send out EIFs on its behalf. (Am. Cross-Compl. at ¶ 20.)

Accordingly, the Court finds that proposed Count III is futile and it will be dismissed.

### F. Count IV: Indemnification

In Count IV, Church's seeks indemnification from Reliance in the event that Church's is held liable for a fiduciary breach. The Court finds that, even assuming that Reliance was a co-fiduciary of Church's for the purpose of EIF administration, no right of co-fiduciary indemnification exists. Therefore, Count IV will be dismissed as futile.

18

As a court in this District recently recognized, "there is a circuit split as to whether one ERISA fiduciary may pursue a contribution action against a co-fiduciary. . . . Although the Sixth Circuit has acknowledged the circuit split, it has not adopted a position." *Computer and Eng'g Servs., Inc. v. Blue Cross and Blue Shield*, No. 12-15611, 2015 WL 4207150, at *2 (E.D. Mich. July 10, 2015) (citing *MacDonnold v. Star Bank, N.A.*, 261 F.3d 478, 485 (6th Cir. 2001)). *Compare Kim v. Fujikama*, 871 F.2d 1427, 1432 (9th Cir. 1989) ("[S]ection 409 of ERISA, 29 U.S.C. § 1109, only establishes remedies for the benefit of the *plan*. Therefore, this section cannot be read as providing for an equitable remedy of contribution in favor of a *breaching fiduciary*. . . . implying a right of contribution is particularly inappropriate where . . . the party seeking contribution is a member of the class whose activities Congress intended to regulate for the protection of . . . ERISA plans . . . and where there is no indication in the legislative history that Congress was concerned with softening the blow on joint wrongdoers."); *and Travelers Cas. Ins. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862, 867 (8th Cir. 2007) ("[W]e hold that ERISA does not create a right of contribution for Travelers against IADA Services, another fiduciary."); *with Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991) (allowing contribution as a remedy based on "traditional trust law"); *and Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir. 1984) ("We believe that in the case of ERISA Congress intended to protect trustees from being ruined by the actions of their cofiduciaries, both because the language of ERISA provides protection for co-trustees and because Congress evidenced an intent to apply general trust principles to the trustee provisions of ERISA.").

To the Court's knowledge, every district court in this Circuit to face the issue has held that there is no right of indemnification or contribution between co-fiduciaries. *See Computer and Eng'g Servs.*, 2015 WL 4207150, at *2; *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of*

*Michigan*, No. 11-12557, 2013 WL 228097, at *2 (E.D. Mich. Jan. 22, 2013); *Fedex Corp. v. N. Trust Co.*, 08–2827–STA–DKV, 2010 WL 2836345 (W.D. Tenn. July 16, 2010); *Gilbert v. Nat'l Emp. Benefit Cos., Inc.*, 466 F.Supp.2d 928, 930 (N.D. Ohio 2006); *May v. Nat'l Bank of Commerce*, 390 F.Supp.2d 674, 676 (W.D. Tenn. 2004); *Roberts v. Taussig*, 39 F.Supp.2d 1010, 1012 (N.D. Ohio 1999); *Daniels v. Nat'l Employee Benefit Servs., Inc.*, 877 F.Supp. 1067, 1073–74 (N.D. Ohio 1995).

Church's says that *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) lightens the weight of this authority. But as the court in *Hi-Lex*, noted, "*Amara* does not address a fiduciary's claim for contribution or indemnification under ERISA; it involves a beneficiary's claim against a fiduciary for reformation of plan terms." 2015 WL 228097 at * 2. Another court has read *Amara* similarly:

> The Supreme Court recently addressed the remedies available under § 502(a)(3) [in *Amara*.] The phrase 'appropriate equitable relief' refers to 'those categories of relief that, traditionally speaking (i.e., prior to the merger of law and equity) were typically available in equity.' A fiduciary's right to contribution and indemnification from co-fiduciaries falls squarely within traditional equitable relief.
>
> However, § 502(a)(3) refers to violations of ERISA or enforcement of a plan's terms, not to the equitable remedies available to a breaching fiduciary against another fiduciary. Moreover, the Supreme Court has previously held that, in order to recover for a violation of § 409 which makes fiduciaries 'subject to such other equitable or remedial relief as the court may deem appropriate,' the relief must 'inure to the benefit of the plan as a whole' and 'Congress did not intend that section to authorize any relief except for the plan itself.'
>
> Therefore, § 502(a)(3) and § 409 cannot form a statutory basis for Defendants' claim for contribution and indemnification from [another fiduciary] because that relief would not benefit the Plan. In sum, there is no statutory right to contribution and indemnification under ERISA.

*Guididas v. Cmty. Nat. Bank Corp.*, No. 8:11-CV-2545-T-30TBM, 2012 WL 5974984, at *2 (M.D. Fla. Nov. 5, 2012).

The Court finds this reasoning and the weight of authority in this Circuit persuasive. So it finds that Count IV of the proposed amended complaint fails to state a claim and will be dismissed.

## IV. CONCLUSION

For the reasons set forth above, IT IS ORDERED that Church's Motion to Amend (Dkt. 50) is DENIED.

IT IS FURTHER ORDERED that Reliance's Motion to Dismiss (Dkt. 41) is GRANTED and the Cross-Complaint is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Reliance's Motion to Stay Discovery (Dkt. 62) is DENIED AS MOOT.

IT IS FURTHER ORDERED that the hearing previously set for September 21, 2015 is CANCELLED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  September 17, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 17, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson

21