UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD AND HARRIET VAN LOO,

     Plaintiffs,

v.

CAJUN OPERATING COMPANY d/b/a
CHURCH'S CHICKEN, a Delaware
Corporation, RELIANCE STANDARD
LIFE INSURANCE COMPANY GROUP
LIFE POLICY (Policy Number GL 140042),
an employee welfare benefit plan, and
RELIANCE STANDARD LIFE INSURANCE
COMPANY, an Illinois Corporation,

     Defendants.

Case No. 14-cv-10604
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

---

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR JUDGMENT ON THE ADMINSTRATIVE RECORD [63], GRANTING DEFENDANT RELIANCE'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [64], AND GRANTING IN PART AND DENYING IN PART CHURCH'S' MOTION TO AMEND SCHEDULING ORDER [77]**

---

     Plaintiffs Donald and Harriet Van Loo filed this lawsuit after Defendant Reliance Standard Life Insurance Company partially denied their claim for life insurance benefits following the death of their daughter, Donna Van Loo. Donna was an employee of Defendant Cajun Operating Company d/b/a/ Church's Chicken. Donna purchased life insurance coverage through Church's, which held a Reliance policy, and named her parents as beneficiaries. But because Van Loo never submitted proof of good health, Reliance found—and maintains—that Plaintiffs cannot recover life insurance benefits in excess of $300,000. At this time, the Court will address the cross-motions for judgment on the administrative record filed by Plaintiffs and Reliance. (Dkts. 63, 64.)

## I.  BACKGROUND

It is undisputed that Donna Van Loo never submitted proof of good health (otherwise known as "evidence of insurability") in support of her life insurance elections through Church's. Based on this missing evidence of insurability form ("EIF"), Reliance denied Plaintiffs benefits in excess of $300,000. Thus, the parties' disputes largely revolve around the proper interpretation of the Policy's good health requirement, whether Van Loo knew about it, and who between Van Loo, Church's, and Reliance was responsible for obtaining it. In this context, the Court must look solely to the Administrative Record to answer these questions. *See Eriksen v. Metro. Life Ins. Co.*, 39 F. Supp. 2d 864, 865–66 (E.D. Mich. 1999). The Administrative Record includes the Policy, a Benefits Guide issued by Church's, personnel information on Donna Van Loo, and communication among Church's, Reliance, and Plaintiffs.

### A.  Relevant Policy Provisions

Reliance provided insurance to Church's employees under the terms of its Group Life Policy. (Dkt. 45-8, Policy.) Several portions of the Policy are relevant. First, the following provision governs the amount of coverage:

AMOUNT OF INSURANCE:

Basic Life and Accidental Death and Dismemberment:

> CLASS 1: One (1) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $200,000.

> CLASS 2: $20,000.

Supplemental Life (Applicable only to those Insureds who elect Supplemental coverage and are paying the applicable premium):

> CLASS 1: Choice of: One (1), Two (2), Three (3), Four (4) or Five (5) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $750,000.

2

CLASS 2: Choice of: $20,000, $40,000, $60,000, $80,000 or $100,000.

Amounts of insurance over $300,000 are subject to our approval of a person's proof of good health. However, any proof of good health required due to late application for this insurance (See EFFECTIVE DATE OF INDIVIDUAL INSURANCE) will be at no expense to us.

(Policy at 0009.) Thus, this section ties "[a]mounts of insurance over $300,000" to Reliance's approval of the insured's good health.

Next, the "Approved Enrollment Periods" section describes conditions applicable when an employer offers an enrollment period to its employees, including a requirement that insureds provide proof of good health in certain circumstances:

Employees who exceed the combined Basic and Supplemental Life Insurance guarantee issue amount of $300,000 [and] employees and dependent spouses who exceed a one level increase in insurance are subject to our approval of proof of good health and such amounts of insurance will not be effective until approved by us.

(*Id.* at 0010.) Thus, the proof of good health requirement is also mentioned in connection with both a "guarantee issue amount of $300,000" and increases of more than one level in coverage.

Finally, the "Incontestability Clause" provides:

Any statement made in your application will be deemed a representation, not a warranty. We cannot contest this Policy after it has been in force for two (2) years from the date of issue, except for non-payment of premium.

Any statements made by you, any Insured or any Insured Dependent, or on behalf of any Insured or any Insured Dependent to persuade us to provide coverage, will be deemed a representation, not a warranty. This provision limits our use of these statements in contesting the amount of insurance for which an Insured or any Insured Dependent is covered. The following rules apply to each statement:

(1) No statement will be used in a contest unless:

(a) it is in a written form signed by the Insured or any Insured Dependent, or on behalf of the Insured or any Insured Dependent; and

3

      (b) a copy of such written instrument is or has been furnished to the Insured or any Insured Dependent, the Insured's or any Insured Dependents beneficiary or legal representative.

      (2) If the statement relates to an Insured's or any Insured Dependent's insurability, it will not be used to contest the validity of insurance which has been in force, before the contest, for at least two years during the lifetime of the Insured or any Insured Dependent.

(Policy at 0013.)

### B. Relevant Employee Materials

Certain Church's' Employee Benefit Guides are also part of the administrative record. (Dkt. 45-6, 2012 Benefits Guide, at 0454.) They mention the proof of good health requirement. For example, a section entitled "When is Evidence of Insurability Required?" states:

      <u>Supplemental Life Insurance</u>– If you want to increase your coverage during open enrollment, you may increase by one level (such as from 1x salary to 2x salary). Increases of more than this, or more than $150,000, may require an Evidence of Insurability form.

(*Id.* at 0468; 0495.)

### C. Donna Van Loo

Donna Van Loo began working for Church's on May 21, 2007. (AR at 0010, 407.) She enrolled in Church's' life insurance plan at that time, designating her parents as equal beneficiaries. (AR at 16, 20, 80.) On May 21, 2007, with a salary of $100,000, she elected "2x salary" in supplemental life benefits. (AR at 70, 130, 444.) On January 1, 2008, with a salary of $102,465, she elected "3x salary" in supplemental life benefits. (*Id.*) She did not submit an evidence of insurability form, Reliance's mechanism for evaluating an insured's good health, at this time.

While Reliance was the claims administrator and Church's the plan administrator, three years later, in December 2010, Reliance undertook to mail evidence of insurability forms to

4

certain plan participants. This was initiated in a December 2, 2010 e-mail exchange between Chandra Matthews, Senior Benefits Manager at Church's, and Taree Murphy, a Regional Account Manager at Reliance Standard. (AR at 0427.) Matthews asked Murphy to "confirm the following: [evidence of insurability] is needed for: 1. New hires who elect an amt of sup life that is over $300k; 2. Open enrollment changes who elect more than a 1-level increase in either supp or spouse life; OR 3. Open enrollment changes who elect more than $300k in sup life coverage[.]" (*Id.*) She further inquired whether Murphy could "provide me with your most recent EOI? If we provided you with a list of the employees who need EOI and their addresses, could you send?" (*Id.*)

> Murphy responded the same day:
>
> I will be back in the office tomorrow and will review your contract to confirm the EOI rules. What you have detailed below is our standard, but I want to make sure that there are no special provisions in place before I confirm. We do not typically send out EOI forms, b[ut] how many forms do you think will be needed? We might be able to do this as an exception this time.

(*Id.*)

As far as the administrative record reveals, the next communication between Murphy and Matthews occurred on December 29, 2010. (*Id.* at 0522–0526.) Murphy e-mailed Matthews, stating "we are just getting out the EOI forms to the employees this week." (*Id.* at 0523.) Attached to the e-mail was a draft cover letter to be sent along with the forms. The draft letter, with Matthews' changes, read as follows:

> You are receiving the enclosed Evidence of Insurability form for completion due to your election of an amount over the Guaranteed Issue amount . . . . Your elected amount will not be active until you have been approved by our Medical Underwriting department.

(*Id.* at 0522.)

5

The final version of the cover letter is not in the record. However, Reliance did at some point send Church's a list of employees needing an EOI, some with "X" next to their names. (*Id.* at 0432.) Reliance's briefing indicates that an "X" meant that a form was sent to that individual (Reliance Mot. at 9). Indeed, in Reliance's appeal denial, Reliance Appeals Specialist Melissa Andre stated, "Ms. Murphy has confirmed that she mailed [the EOI forms] to those on the list. In fact, Ms. Murphy recalls the 'X' under the section marked 'form' indicated that an evidence of insurability [form] was sent to the employee at the address noted." (AR at 0093.) Van Loo's name is on this list and has an "X" next to it. (*Id.* at 0432.) However, it is undisputed that Van Loo did not submit an EIF after December 2010.

Van Loo's next coverage election came shortly thereafter. On January 1, 2011, with a salary of $117,500, she elected "4x salary" in supplemental life benefits. (*Id.*) She received a pay raise to an annual salary of $122,200 in 2012. (*Id.*) "Salary" also included bonuses. So as of April 2012, Van Loo was enrolled for a total of $614,000 in basic and supplemental life insurance. (*Id.* at 70, 130.)

Van Loo left her employment with Church's on disability in December 2012 after being diagnosed with esophageal cancer (onset date December 27, 2012). (*Id.* at 102.) While she was out on leave, Miikii Johnson, a Benefits, Compensation, and Leave Specialist with Church's, informed her that "[w]hile you are not receiving paychecks from Church's, benefit premiums are not being deducted and you must pay these directly to Church's. . . . [including a] Supplemental life [monthly premium in the amount of] $97.31." (*Id.* at 440.) It is undisputed that Van Loo complied with this directive.

Van Loo passed away on March 4, 2013. (*Id.* at 0099.) At no time did Van Loo submit an EIF.

6

### D. Claim determination

On March 9, 2013, Donald and Harriet Van Loo submitted a claim for $614,000 in life insurance benefits. (AR at 101–02.)

On April 10, 2013, Reliance's Senior Group Life and A&D Examiner Jane Hopson e-mailed Miikii Johnson. (*Id.* at 146–47.) Hopson commented,

> Appears the policy has a combined Guarantee Issue amount of $300,000. Based on her current salary of $122,200 and her election history she exceeded the Guarantee Issue amount of $300,000 and appears proof of good health was not provided. Do you have any documentation to support proof of good health was provided to Reliance Standard Life?

(*Id.* at 0444.) It seems that Johnson responded to Hopson's questions in the body of Hopson's e-mail: "I do not have any documentation that was provided to Reliance to support proof of good health." (*Id.*) An e-mail from Reliance's Underwriting department also stated that Reliance had not received proof of good health from Van Loo. (*Id.* at 78.) As a result, Reliance advised Church's that it would only pay the Van Loos $300,000, the Policy's Guarantee Issue amount. Church's did not dispute this assessment. (*Id.* at 74.)

In a letter dated April 17, 2013, Reliance advised Plaintiffs that "based upon our review of this claim and the policy provisions we have determined that the supplemental life insurance benefit payable is $175,000." (*Id.* at 81.) The previous day, April 16, 2013, Reliance had issued checks to Plaintiffs. Donald and Harriet each received a check for half of the basic life benefits plus interest ($62,996.22) and half of the supplemental life benefits plus interest ($88,194.70). (*Id.* at 81.) Thus, Reliance paid a total of approximately $300,000 to Plaintiffs. In the meantime, Church's sent Plaintiffs a check for $3,900.78, thus remitting premiums received for the coverage that was not paid out by Reliance. (*Id.* at 535.)

7

**E.  Appeal**

On June 13, 2013, Plaintiffs submitted a Request for Reconsideration along with some supplemental materials. (AR at 150–51; 356–74.) Plaintiffs specifically raised three grounds for appeal: (1) "there is no indication why the company collected premiums for more than five (5) years without requiring the submission of the required documentation"; (2) "I do not find any 'non-waiver' provision in the contract whereby the failure to enforce a provision of the policy is not a waiver of the policy terms"; and (3) "the contract also has an 'Incontestability' clause[.]" (*Id.* at 152.)

Reliance upheld its decision on November 1, 2013. (*Id.* at 92–95.) Reliance specifically responded to Plaintiffs' arguments in its letter. In response to Plaintiffs' contention that Reliance never requested an EIF despite knowing that Van Loo had not submitted one, Reliance stated that it had in fact mailed an EIF to Van Loo in 2010, but never received a response. (*Id.* at 93.) Reliance further stated that because Church's utilized the "Self-Administered" billing option, Church's would "typically [be] responsible for ensuring that coverage elections (including any required proof of good health) are processed in accordance with the terms and conditions of the actual policy and that premium remittances are accurate and timely." (*Id.* at 94.)

Reliance also instructed Plaintiffs that "[t]o the extent that premiums may have been deducted from the Insured's pay for this coverage, please contact the Policyholder, Church's Chicken to arrange for a premium refund." (*Id.*) As to Plaintiffs' argument that the "Incontestability" clause barred Reliance from denying coverage, Reliance found that the provision was inapplicable because "[t]here [was] no contest as to the validity of the Policy . . . . Instead, the Policy is otherwise valid and we have referred to its terms and conditions to determine the amount of insurance on the life of Ms. Van Loo." (*Id.* at 95.)

### F.  Procedural History

Plaintiffs filed suit against Reliance and Church's in this Court on February 10, 2014. (Dkt. 1.) As a result of the substantial motion practice that ensued, this Court has issued two prior opinions in the case. *See Van Loo v. Cajun Operating Co. et. al*, --- F. Supp. 3d --- No. 14-CV-10604, 2015 WL 5460693, at *1 (E.D. Mich. Sept. 17, 2015) (granting Reliance's motion to dismiss Church's cross-complaint and denying Church's motion to amend its cross-complaint); *Van Loo v. Cajun Operating Co. et. al*, 64 F. Supp. 3d 1007, 1011 (E.D. Mich. 2014) (granting Reliance's motion to dismiss the Complaint and granting in part and denying in part Church's motion to dismiss the Complaint). Plaintiffs' remaining claims are Count I, a denial of benefits claim against Reliance for its decision to not pay the full amount of the life insurance benefits; Count II, a breach of fiduciary duty claim against Church's for failing to inform Van Loo of the EIF requirement and representing to her that she qualified for the full amount of supplemental life insurance benefits; and Count III, a breach of fiduciary duty claim against Reliance. (*See* Dkt. 60, Am. Compl.) This opinion will address Plaintiffs' and Reliance's cross-motions for judgment on the administrative record as to Count I. (Dkts. 63, 64.) *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998) (establishing the use of cross-motions for judgment as the appropriate mechanism to resolve ERISA denial-of-benefits claims).

## II.  STANDARD OF REVIEW

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[U]nder *Bruch*, application of the highly deferential arbitrary and capricious standard of review is appropriate only if the plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). The parties agree that arbitrary and capricious review applies here. (Reliance Mot. at 11; Pls.' Mot. at 9.)

Under the arbitrary and capricious standard, the Court will uphold Reliance's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.* "Although that standard is deferential, it is not a rubber stamp for the administrator's determination." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). On review, this Court considers only the evidence before the plan administrator at the time the beneficiaries' benefits eligibility was determined. *Yeager*, 88 F.3d at 381.

## III. ANALYSIS

After addressing the role Reliance's conflict plays in the analysis, the Court will turn to Plaintiffs' arguments regarding policy ambiguities, incontestability, and waiver.

### A. Conflict of Interest

Plaintiffs first emphasize that Reliance was operating under an inherent conflict of interest, as the party responsible for both adjudicating claims and paying out coverage. (Pls.' Mot. at 11.) Thus, say Plaintiffs, "this fact should weigh in favor of reversing Reliance's benefit denial." (*Id.*)

The parties agree that "[a]s a plan insurer and decision-maker, Reliance Standard is deemed to be operating under an inherent conflict of interest." (Reliance Mot. at 12; see also

Pls.' Mot. at 10.) The Supreme Court has commented, in dicta, that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Bruch*, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187, Comment d (1959)). However, this statement does not "impl[y] a change in the standard of review, say, from deferential to de novo review." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). Instead, "[i]n close cases, courts must consider that conflict as one factor among several in determining whether the plan administrator abused its discretion in denying benefits." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009).

> In *Glenn*, the Supreme Court commented that a conflict of interest
>
> should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

554 U.S. at 117 (citation omitted). It appears that before *Glenn*, some circuits held that a conflict of interest could transform the standard of review from arbitrary and capricious to de novo. Indeed, Plaintiffs cite one such case—*Gaines v. Sargent Fletcher, Inc. Group Life Insurance Plan*, 329 F. Supp. 2d 1198, 1215 (C.D. Cal. 2004). However, since *Glenn*, the Sixth Circuit has held that a conflict of interest is a factor to be weighed in close cases. *Cox*, 585 F.3d at 299. Another case Plaintiffs rely on reached the same conclusion. *See Am. Soc'y for Technion Israel Inst. of Tech., Inc. v. First Reliance Std. Life Ins. Co.*, No. 07 Civ. 3913, 2009 U.S. Dist. LEXIS 82306, at *7 (S.D.N.Y. Sept. 8, 2009).

11

Accordingly, the Court will consider Reliance's conflict of interest  as a factor in its review, but will still apply the arbitrary and capricious standard.

### B. Policy Ambiguity

As a preliminary matter, Plaintiffs state that "[i]t is well-settled that where an ERISA plan is ambiguous and susceptible of more than one interpretation, the Sixth Circuit applies the rule of *contra proferentum* and therefore this Court must construe any ambiguities against Reliance as the drafting party of the Group Life Policy." (Pls.' Mot. at 11.) Reliance responds by citing *Mitzel v. Anthem Life Insurance Co.*, 351 F. App'x 74, 81 (6th Cir. 2009). (Dkt. 69, Reliance Resp. at 10.)

In *Mitzel*, the Sixth Circuit commented that where the "administrator's denial of benefits is reviewed under the arbitrary and capricious standard because of the discretion conferred by the Plan," "invoking the rule of *contra proferentem* undermine[d] the arbitrary and capricious standard of review" because under that standard, "courts must *favor* a plan administrator's interpretation over an equally reasonable contrary interpretation." *Mitzel*, 351 F. App'x at 81 (emphasis in original). After acknowledging that prior Sixth Circuit decisions had applied the rule in the arbitrary and capricious context, the Court concluded that "[l]imiting the application of the *contra proferentem* rule to cases in which an administrator's decision is reviewed de novo strikes us as the only sensible approach to resolving ambiguities in plan documents." *Id.*

Thus, the Court will not apply the principle of *contra proferentem* here. *See Schlusler v. Michigan United Food & Commercial Workers Unions*, No. 06-13622, 2011 WL 2470076, at *4 (E.D. Mich. June 20, 2011) ("[T]he principle of *contra proferentum* is inapplicable to the review of an ERISA plan's denial of benefits under the arbitrary and capricious standard."). Instead, "the Court's inquiry is whether Defendants' interpretation of the [term at issue] was reasonable, and

12

not whether the term was ambiguous and should be construed against Defendants under federal common law rules of ERISA contract interpretation." *Morrison v. Regions Fin. Corp.*, 941 F. Supp. 2d 892, 909 (W.D. Tenn. 2013).

Applying this standard, the Court will address Plaintiffs' interpretation of the term "Amounts of Insurance." Plaintiffs argue that the provision can "only lead to one conclusion: that an EIF is only required where the amount of elected Supplemental Life Insurance Benefits exceeds $300,000." (Pls.' Mot. at 18.) The Court previously rejected this argument in the second *Van Loo* opinion, holding that based on the unambiguous language of the Policy, "the EIF requirement is applicable to the total amount of insurance purchased by an insured, rather than merely the supplemental coverage purchased." *Van Loo*, 2015 WL 5460693 at *8. Thus, the Court does not agree that "the very least that Reliance should have tendered to Plaintiffs upon Ms. Van Loo's death is $425,000 (Basic Life Insurance Benefits totaling $125,000 and Supplemental Life Insurance Benefits totaling $300,000), because the EIF requirement was only triggered upon Ms. Van Loo's election of Supplemental Life Insurance Benefits totaling over $300,000." (Pls.' Mot. at 19.)

According to Plaintiffs, other sources of ambiguity in the Policy are (1) a lack of clarity as to "who has the affirmative duty or burden to obtain and/or send the EIF" (Pls.' Mot. at 16), and (2) that the Policy does not clarify what exactly constitutes proof of good health. (Pls.' Mot. at 16.) Reliance counters that the ambiguity arguments are forestalled by the fact that Reliance mailed Van Loo an EIF and she never returned it (Plaintiffs state that there is no evidence in the Administrative Record to support this assertion.)

The Court begins with the argument that Reliance in fact mailed Van Loo an EIF. This argument requires the Court to review facts that Reliance determined as part of its administrative

13

process. Again, the parties agree that Reliance does have discretionary authority to interpret the plan and make benefits determinations, so the arbitrary and capricious standard applies to this Court's review. *See Wilkins*, 150 F.3d at 613.

The Court finds that Reliance's factual finding was not arbitrary and capricious. The Administrative Record shows that Reliance was not normally responsible for mailing the forms, that it did not know that (while she qualified for supplemental benefits in 2008) Van Loo had not received a form until 2010, and that it mailed her a form when asked to do so. Specifically, the Church's Plan was self-administered, meaning that Church's would usually have the responsibility to keep track of elections and mail EIFs when necessary. Reliance only found out that Van Loo had not submitted a form when Church's made contact with one of its employees. And Reliance has provided evidence that Van Loo's name did appear on the list of people who needed forms, with a check mark next to it to indicate that a form had been mailed. Indeed, Reliance's internal investigation included an interview with Murphy, who stated that she did mail the form to Van Loo. There are no facts suggesting otherwise in the administrative record.

Instead, Plaintiffs counter this conclusion with *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711 (8th Cir. 2014). There, the insured submitted a late application for his employer's life insurance policy. *Id.* at 713. The terms of the Policy "require[d] evidence of insurability satisfactory to" Metropolitan Life Insurance Company in the event that the claimant "ma[d]e a late request for Supplemental Life Insurance." *Id.* at 714. After the insured passed away, the insurance company denied benefits based on his failure to submit evidence of insurability. *Id.* In reversing the district court's grant of summary judgment to the insurer on plaintiff's § 1132(a)(1)(B) claim, the Eighth Circuit commented:

> Silva's § 1132(a)(1)(B) argument turns on the following question: What does the phrase 'evidence of insurability' mean in the Plan? . . . To resolve [this question],

14

> it may be necessary to know: what Savvis communicated to Abel regarding the Statement of Health form requirement through the online prompt or otherwise; what information would be disclosed in the Statement of Health form; and whether Abel's allegedly healthy, daily presence at work could be sufficient to establish insurability. . . These outstanding questions of material fact prevent our court from assessing whether MetLife abused its discretion.

*Id.* at 719. It is unclear how *Silva* can be reconciled with Sixth Circuit precedent given that the Eighth Circuit engaged in a summary-judgment analysis on the denial-of-benefits claim there. In particular, the Sixth Circuit has commented that "the logic of Rule 56 does not comport with the . . . standard of review [prescribed by Sixth Circuit precedent]. Rule 56 is designed to screen out cases not needing a full factual hearing. To apply Rule 56 after a full factual hearing has already occurred before an ERISA administrator is therefore pointless." *Wilkins*, 150 F.3d at 619.

The Court therefore rejects all of Plaintiffs' policy ambiguity arguments. First, the only reasonable interpretation of the unambiguous Policy language is that "Amounts of Insurance" applies to the total of basic and supplemental life insurance. Second, *Silva*'s holding conflicts with Sixth Circuit precedent regarding the standard of review for denial-of-benefits claims. Third, applying the appropriate standard of review, the Administrative Record shows that Reliance did mail an EIF to Van Loo. Given these conclusions, the Court need not address the argument that the Policy did not specify what proof of good health meant.

## C.  Incontestability Clause

Plaintiffs next turn to the Policy's incontestability clause. They argue that "there can be no dispute that Ms. Van Loo paid all of her premiums for the Supplemental Life Insurance Benefits," and because Reliance never disputed the Policy's effectiveness during that time, it cannot do so now. (Pls.' Mot. at 22.) Reliance responds that this provision "applies to situations where coverage was issued and the insurer later attempts to invalidate such coverage, usually

15

based on a misrepresentation made on the application." (Reliance Resp. at 18.) Reliance says that is not the case here, as coverage never became effective in the first place. (*Id.*)

"It is hornbook law that '[a]n incontestable clause means exactly what it says; that is, it cuts off all defenses based on misrepresentations where the policy is not affirmatively repudiated within the incontestable period.'" *Massachusetts Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450, 1456 (6th Cir. 1997) (citing 18 Couch on Insurance 2d § 72:75). These types of clauses "protect both the insurer and insured. An incontestable clause safeguards an insured from excessive litigation many years after a policy has already been in force and assures him security in financial planning for his family, while providing an insurer a reasonable opportunity to investigate." *Provident Life & Acc. Ins. Co. v. Altman*, 795 F. Supp. 216, 221 (E.D. Mich. 1992) (citation omitted); *see, e.g.*, *Jones v. United States Life Insurance Co.*, 12 F.Supp.2d 383 (D.N.J. 1998) (upholding the insurer's decision to rescind life insurance coverage because "[c]oncealment of the very condition that caused death can justify the rescission of a life insurance policy. . . . full disclosure of past medical history is essential to permit insurers such as defendant to properly evaluate risk and any cost to be charged.").

Because ERISA does not specifically address the issue of misrepresentations in insurance applications, courts look to state law in construing incontestability clauses. The Policy here provides, "The Policy is delivered in Georgia and is governed by its laws." (AR at 0001.) Moreover, Georgia choice-of-law principles provide that matters of insurance contract interpretation are to be decided under the law of the state where the contract is delivered, which, in this case, is Georgia. *See Am. Family Life Assurance Co. v. United States Fire Company*, 885 F.2d 826 (11th Cir. 1989).

16

Georgia courts construe provisions regarding proof of good health as "conditions precedent" to an insurer's liability under a policy. *See, e.g.*, *Reliance Life Ins. Co. v. Hightower*, 98 S.E. 469, 470 (Ga. S. Ct. 1919); *Equitable Life Assur. Soc. v. Florence*, 171 S.E. 317, 319 (Ga. Ct. App. 1933). And in Georgia, incontestability clauses cannot be used to "breathe life into an insurance contract" that never became effective due to the failure of a condition precedent to coverage. *Wood v. New York Life Ins. Co.*, 336 S.E.2d 806, 808 (Ga. S. Ct. 1985). That is, "[t]he [incontestability] clause itself . . . presupposes a valid contract and not one void *ab initio*—it cannot be used as a vehicle to sanctify that which never existed." *Id.* Thus, in *Wood*, the court agreed with the insurer that because the decedent failed to sign his application or consent in writing as required by the policy, his coverage never became effective. The court therefore rejected the plaintiff's contention that "since the initial policies were all issued more than two years prior to [his] death, the insurance companies [were] . . . barred by the incontestability clauses from raising the void *ab initio* defense." *Id.*

Plaintiffs respond with a case to the contrary: T *Patterson v. Reliance Standard Life Ins. Co.*, 986 F. Supp. 2d 1140 (C.D. Cal. 2013). In *Patterson*, plaintiff's decedent purchased life insurance through Reliance, and Reliance denied plaintiff's claim because it had not received proof of the decedent's good health. 986 F.Supp.2d at 1140. The court found that based on the undisputed facts, the decedent "did not fulfill a condition precedent required by the Plan." *Id.* at 1149. Nonetheless, the court held that "the incontestability clause applies to a contest based on breach of a condition precedent. Accordingly, Reliance Standard's argument that its denial of benefits is not a 'contest' within the meaning of the incontestability clause fails." *Id.* at 1150 (citing *Amex Life Assurance Co. v. Super. Ct.*, 930 P.2d 1264 (Cal. S. Ct. 1997)). But *Patterson* was decided under *California* law and this Court has to apply *Georgia* law.

17

Moreover, a closer examination of *Amex*, the California case on which *Patterson* relied, reveals that the court there was faced with an HIV-positive insured who had applied for insurance under his own name, and then sent an HIV-negative imposter to give blood and urine samples during the insurer's required physical. Thus, the insured in *Amex* misrepresented his medical status in order to obtain coverage (that is, satisfy the condition precedent of proving good health). Here, by contrast, Van Loo made no misrepresentation to Reliance because she never actually submitted any proof of good health, whether false or accurate. Thus *Patterson* not only involved different law, it also involved different facts. The insurance company was on notice in *Amex* that plaintiff was seeking to qualify for certain benefits and had the opportunity to undertake an evaluation of the insured's affirmative representations and then decide whether to accept or reject the request. Here, Reliance had no such opportunity.

Accordingly, Plaintiffs' incontestability argument does not entitle them to summary judgment.

### D.  Waiver

Finally, Plaintiffs assert that Reliance waived its right to deny coverage because "for six years, neither Reliance nor Church's indicated to Ms. Van Loo that she had failed to comply with a precondition to obtaining the full amount of Supplemental Life Insurance Benefits." (Pls.' Mot. at 24.) Reliance makes three arguments in response: (1) Reliance had no information about individual coverage elections until the submission of a claim; (2) Reliance made no direct representations to Van Loo during her lifetime; and (3) as soon as Reliance found out that Van Loo needed to submit proof of good health, it mailed her a form. (Reliance Resp. at 22–23.)

As an initial matter, it is not even clear that Plaintiffs can invoke waiver under the federal common law of ERISA. The Sixth Circuit has not ruled on the issue and other circuits are split.

18

*Thornton v. W. & S. Fin. Grp. Beneflex Plan*, 797 F. Supp. 2d 796, 806 (W.D. Ky. 2011) (citing cases). The Court will nonetheless address Plaintiffs' waiver claim because in *Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 619 (6th Cir. 2013) the Sixth Circuit (albeit without commenting on the applicability of waiver in the ERISA context) addressed a plaintiff's argument that his insurer waived a potential defense to liability for disability benefits.

"Waiver is the voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such waiver, would have been enjoyed." *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir. 1993). Courts outside of this circuit have evaluated ERISA waiver claims under the summary judgment standard. *See, e.g.*, *id.*; *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1348 (11th Cir. 1994). District courts in this circuit have held that in the ERISA context, "in order to establish a claim of waiver, the plaintiff must demonstrate that the defendant intentionally relinquished its known rights, resulting in a detriment to the plaintiff or a benefit to the defendant." *Thornton*, 797 F. Supp. 2d at 807 (quoting *Agee v. Jennie Stuart Med. Ctr.*, No. CIV.A. 5:05CV-154-R, 2007 WL 923090, at *5 (W.D. Ky. Mar. 23, 2007)).

Plaintiffs have not made such a showing here. First, the administrative record shows that Reliance did not have knowledge that Van Loo's proof of good health form was missing until 2010: Church's maintained records of good health (AR at 94) and Reliance learned about Van Loo's form in December 2010, when Matthews sent the e-mail to Murphy. (*Id.* at 427.) Second, once Reliance learned that Van Loo had not submitted proof of good health, it mailed her a form—along with a cover letter explaining that proof of good health was required in order for coverage over $300,000 to be effective. (*Id.* at 78, 93, 522.) Plaintiffs have not pointed to any evidence in the administrative record to counter these assertions, yet it is Plaintiffs' burden to

show waiver. *Thornton*, 797 F. Supp. 2d at 807. Moreover, any representations as to the availability and effectiveness of coverage flowed from Church's to Van Loo—nothing in the administrative record shows that Reliance communicated with Van Loo after she enrolled and increased her elections, aside from the 2010 mailing of the form.

Accordingly, the Court does not find that Reliance waived its ability to assert the lack of EIF in its decision to deny coverage.

## IV. CHURCH'S' MOTION TO AMEND SCHEDULING ORDER

The Court now turns to Church's request that this Court modify the scheduling order in this case "after this Court rules on [P]laintiffs and Reliance's cross-motions for judgment on the administrative record." (Dkt. 77, Mot. to Amend Scheduling Order at 1.) Plaintiffs oppose the request. (Dkt. 79.)

Citing economy and efficiency, Church's claims that it held off on conducting discovery with respect to Plaintiff's breach of fiduciary claim until the Court issued this ruling on Plaintiff and Reliance's cross-motions for summary judgment. More specifically, Church's contends that a ruling entitling Plaintiffs to recover the contested life insurance benefits from Reliance would have mooted Plaintiffs' claims against Church's to recover for this same loss. Church's also claims that it held off on discovery given the number of dispositive motions that had been filed, Reliance's request to stay discovery pending resolution of certain of these motions, and the parties' participation in two (unsuccessful) facilitation sessions to try to settle the case. Thus, two weeks after the close of the discovery period, Church's filed a motion to amend the scheduling order. (Dkt. 77, Church's Mot. to Amend.) Church's seeks an additional four months to obtain "discovery on, among other things, Reliance's underwriting practices and Ms. Van Loo's health." (*Id*. at 4.)

Certain aspects of this motion, however, do not comport with the parties' conduct. It does not appear that Church's ever shared its delayed discovery strategy with Plaintiffs. Thus, throughout the nine month discovery period, Plaintiffs have been actively pursuing discovery, including out-of-state depositions. (Dkt. 79, Pls.' Resp. at 3–4.) Indeed, they have filed a motion for summary judgment on their remaining claim against Church's. (Dkt. 78.)  Church's also pursued some discovery. It served interrogatories and document requests on Plaintiffs as well as subpoenas for Ms. Van Loo's medical records. (Dkt. 80, Church's Reply at Exhs. A–D.)

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). A court asked to modify a scheduling order for good cause "may do so only if [a deadline] cannot reasonably be met despite the diligence of the party seeking the extension." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (internal quotation marks omitted). Moreover, "courts consider the extent of prejudice to the nonmoving party only if the movant proceeded diligently, and then only to ascertain whether there exist 'additional reasons to deny a motion.'" *Smith v. Holston Med. Group, P.C.*, 595 F. App'x. 474, 479 (6th Cir. 2014) (quotation omitted).

This case has been extensively litigated. Relevant documents have been attached to the numerous dispositive motions. The cross-motions for summary judgment on the denial of benefits claim involve an extensive administrative record that includes materials relevant to the fiduciary claim against Church's. The written discovery and subpoenas served by Church's will also provide relevant discovery in defending this claim. Church's does not identify any new information it needs from Plaintiffs. It refers to deficiencies and/or inadequacies in Plaintiffs' discovery responses, but those can and should be cured through Plaintiffs' obligation to supplement their responses. *See* Fed. R. Civ. P. 26(e). Plaintiffs are both over 80 years old and

21

are understandably desirous of moving this case along. The Court finds that Church's has failed to establish good cause to extend discovery against Plaintiffs.

With respect to Reliance, however, there does appear to be some confusion amongst the parties as to the scope of permissible discovery given Reliance's motion to stay discovery pending a ruling on its motion to dismiss Church's Cross-Complaint. (Dkt. 62.) Thus, the Court will give Church's an additional 60 days from the date of this Order to obtain "discovery from Reliance which is relevant to plaintiffs' ERISA claim against Church's." (Mot. to Amend at 1.) Church's may also use this extension to obtain any additional relevant medical information from third parties pertaining to Ms. Van Loo's medical condition.

## V.  CONCLUSION

The Court must look to the information that Reliance had when making the decision to deny Plaintiffs' claim for benefits, and the sole question raised in this motion is whether or not Reliance's decision to deny benefits was arbitrary and capricious. The information in the Administrative Record indicated that Van Loo was mailed an EIF by Reliance in 2010, but never returned it to Church's or Reliance. And although Reliance was operating under a conflict of interest as the party who both adjudicated and paid claims, the Court finds that this conflict did not influence Reliance's conduct—before 2010, it was Church's responsibility to mail EIFs to insureds, and the Administrative Record indicates that once Reliance took responsibility for this task, it did mail the form to Van Loo. Moreover, Reliance's interpretation of the Policy provision was the only reasonable interpretation of the unambiguous Policy language.

Therefore, IT IS ORDERED that Reliance's Motion for Judgment on the Administrative Record (Dkt. 64) is GRANTED and Plaintiffs' Motion for Judgment on the Administrative Record (Dkt. 63) is DENIED.

IT IS FURTHER ORDERED that Church's Motion to Amend Scheduling Order (Dkt. 77) is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  December 4, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 4, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson