UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD AND HARRIET VAN LOO,

      Plaintiffs,

v.

CAJUN OPERATING COMPANY d/b/a
CHURCH'S CHICKEN, a Delaware
Corporation, RELIANCE STANDARD
LIFE INSURANCE COMPANY GROUP
LIFE POLICY (Policy Number GL 140042),
an employee welfare benefit plan, and
RELIANCE STANDARD LIFE INSURANCE
COMPANY, an Illinois Corporation,

      Defendants.

Case No. 14-cv-10604
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

---

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT [78] AND DENYING DEFENDANT CHURCH'S MOTION FOR
SUMMARY JUDGMENT [81]**

---

Donna Van Loo was a corporate attorney employed by Defendant Cajun Operating Company d/b/a Church's Chicken ("Church's"). She purchased life insurance (provided by former co-defendant, Reliance Standard Life Insurance Company) as part of her Church's benefits package. Van Loo increased her coverage throughout her employment, and Church's, as the Plan Administrator, represented to her—through its intranet site and communications by its benefits specialists—that her increases had become effective. But Van Loo did not know that she should have submitted an evidence of insurability form ("EIF") to Reliance in 2008, when her coverage crossed $300,000—Reliance's guaranteed-issue threshold amount. So when Van Loo's beneficiaries, Donald and Harriet Van Loo, filed a claim after Van Loo died of an aggressive form of esophageal cancer, Reliance gave them only $300,000 out of the $614,000 they sought.

Plaintiffs have now shown that by misrepresenting Van Loo's level of effective life insurance coverage in its role as Plan Administrator, Church's breached its fiduciary duty to her. Accordingly, Plaintiffs are entitled to summary judgment on their claim against Church's, Van Loo's failure to submit the EIF notwithstanding.

## I.  FACTUAL BACKGROUND

On May 16, 2007, Church's offered Donna Van Loo full-time employment as a corporate attorney. (Dkt. 78-2, Offer Letter.) The offer letter advised that as an employee, Van Loo would be eligible for "Employee-Paid benefits includ[ing] Supplemental Life Insurance[.]" (*Id.*) Church's held its Group Life Policy through Reliance Standard Life Insurance Company. (Dkt. 78-3, Policy at PageID 2014.) The "Schedule of Benefits" included two categories of life insurance—basic and supplemental:

AMOUNT OF INSURANCE:

Basic Life and Accidental Death and Dismemberment:

> CLASS 1: One (1) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $200,000.

> CLASS 2: $20,000.

Supplemental Life (Applicable only to those Insureds who elect Supplemental coverage and are paying the applicable premium):

> CLASS 1: Choice of: One (1), Two (2), Three (3), Four (4) or Five (5) times Earnings, rounded to the next higher $1,000, subject to a maximum Amount of Insurance of $750,000.

> CLASS 2: Choice of: $20,000, $40,000, $60,000, $80,000 or $100,000.

Amounts of insurance over $300,000 are subject to our approval of a person's proof of good health.

(Policy at PageID 2022.) According to an Appeal Letter that Reliance would later send to Plaintiffs, the Policy was "Self-Administered," which meant that Church's was "typically

responsible for ensuring that coverage elections (including any required proof of good health) [were] processed in accordance with the terms and conditions of the applicable policy and that premium remittances are accurate and timely. Under this option (absent the submission of any proof of good health), [Reliance] typically ha[d] no record of individual coverage or premium amounts." (Dkt. 78-4, Appeal Letter at PageID 2045.)

Donna Van Loo enrolled in the Policy shortly after she began her employment. On June 29, 2007, Van Loo submitted an enrollment form and selected Supplemental Life benefits at "2x salary." (Dkt. 78-5, 2007 Enrollment Form at PageID 2048.) At that point, her salary was $100,000 per year. (Offer Letter.) She also designated her parents, Plaintiffs Donald and Harriet Van Loo, as her beneficiaries. (*Id.*) Subsequently, Church's began deducting $14.80 per month from her paycheck for "Supp Life." (Dkt. 78-6, July 6, 2007 Pay Stub at PageID 2050.)

On November 13, 2007, Van Loo submitted an open enrollment change form for 2008. (Dkt. 78-7, 2008 Open Enrollment Change Form.) She indicated that she wanted to change her Supplemental Life coverage to "3x salary." (Id. at PageID 2057.) At that time, she still had a salary of $100,000 per year. (Dkt. 45, AR at. PageID 866.) [1] The form stated, "If you wish to increase your supplemental life coverage, you may be required to submit an evidence of insurability form. If so, one will be mailed to you." (*Id.*) No EIF form was mailed to Van Loo.

On November 11, 2010, Van Loo submitted another enrollment change form for the year 2011. (Dkt. 78-8, Nov. 11, 2010 Benefit Enrollment Form.) She elected Supplemental Life in the amount of "4x Annual Salary." (*Id.*) At that time, she had a salary of $107,650.52. (AR at PageID 866.)

---

[1] The parties have referred to the Administrative Record, previously filed in conjunction with Plaintiffs' denial-of-benefits claim against Reliance, as part of the summary-judgment briefing.

3

Van Loo maintained her "4x Annual Salary" election in 2012 and 2013. (Dkt. 78-8, Oct. 18, 2012 Benefit Enrollment Form.) At that point, she had a salary of $117,500 and $122,200, respectively. (AR at PageID 866.) Upon completing her October 18, 2012 enrollment form, Church's computer system generated a message stating, "CONGRATULATIONS on completing your benefits enrollment for 2013." (*Id.* at PageID 2061.)

Throughout Van Loo's employment, Church's deducted premium payments directly from her paycheck. (See Dkt. 78-6, Pay Stubs.) Van Loo's final benefits election of "4x Annual Salary" in Supplemental Life resulted in a deduction of $97.31. (*Id.*)

Around December 2012, Van Loo became ill with esophageal cancer and left work on disability leave. (Dkt. 78-12, Proof of Loss Claim Statement.) Shortly thereafter, on February 21, 2013, Miikii Johnson, Church's Benefits, Compensation and Leave Specialist, sent Van Loo a letter informing her, "While you are not receiving paychecks from Church's, benefit premiums are not being deducted and you must pay these directly to Church's." (Dkt. 78-10, Feb. 21, 2013 Letter at PageID 1159.) Johnson further stated that Van Loo would need to pay $97.31 for "Supplemental Life." (*Id.*) Van Loo paid these premium payments for the pay periods spanning February 11, 2013 through March 10, 2013; Johnson acknowledged these payments via letter on March 1, 2013. (Dkt. 78-11, Mar. 1, 2013 Letter at PageID 2063.)

At her deposition, Johnson testified, "Any employee that's out on any type of leave of absence and are no longer receiving a paycheck from Church's Chicken, we have to send out a notification to the employee to let them know that while they are not being paid by Church's, in order to keep their benefits active we must receive a benefit premium." (Dkt. 78-22, Johnson Dep. II at 59.) Johnson stated that she did not check Van Loo's eligibility for the supplemental coverage before mailing the letter. (Johnson Dep. II at 60.)

4

Van Loo passed away on March 4, 2013. (Dkt. 78-12, Proof of Loss Claim Statement.) At the time of her death, her annual salary was $122,200. (*Id.*) Thus, her parents submitted a claim to Reliance for "4x" that amount. (*Id.*) Reliance sent a letter to Johnson, with a copy going to Donald and Harriet Van Loo, on April 17, 2013. (Dkt. 78-13, Apr. 17, 2013 Letter at PageID 2069.) The letter stated that Reliance was partially denying the claim: "We note the group supplemental life insurance benefit of Four (4) times Earnings was claimed, but based upon our review of this claim and the policy provisions we have determined that the supplemental life insurance benefit payable is $175,000." (Id. at PageID 2067.) Citing the Policy's "Amount of Insurance" language, Reliance stated:

> Based on the enrollment history provided, at the time of Donna Van Loo's date last worked on January 31, 2013, she elected four (4) times annual earnings ($122,200) which equates to $489,000 (rounded to the next higher $1,000). As the total amount of basic and supplemental life insurance coverage exceeded the guarantee issue amount of $300,000, proof of good health was required. Such proof was never received in our office. Consequently, the benefit available for the group life insurance is $300,000. We cannot honor the [claimed] benefit of $614,000.

(*Id.* at PageID 2068.)

Plaintiffs appealed. The basis of the appeal was that "there is no indication why the company collected premiums for more than five (5) years without requiring the submission of the required documentation." (Dkt. 78-7, Appeal Letter at PageID 2115.) Plaintiffs later supplemented their appeal. (Dkt. 45, Admin. Record at PageID 1076.) They pointed out that "there is no evidence that an EIF form was ever mailed to Ms. Van Loo for her to submit" even though Reliance took responsibility for that task in 2010, and argued that the benefits guides and enrollment forms provided to Ms. Van Loo were "ambiguous" as to when an EIF would be required. (*Id.* at PageID 1077.) Despite this, Plaintiffs argued, Van Loo paid all of her premiums in full for the coverage she had elected. (*Id.* at PageID 1081.)

5

On November 1, 2013, Reliance issued a letter upholding its April 2013 benefits determination. (Dkt. 78-18, Appeal Determination Letter.) In particular,

> As to the 2010 e-mail correspondence regarding EIF mailing, "Further investigation into these emails revealed that [Reliance] made an exception in this situation and volunteered to mail the employees who required evidence of insurability forms on behalf of Church's Chicken. Ms. Murphy has confirmed that she mailed these necessary forms to those on this list. In fact, Ms. Murphy recalls the "X" under the section marked "Form" indicated that an evidence of insurability form was sent to the employee at the address noted. An "X" is marked next to Ms. Van Loo's name therefore, [Reliance] requested the require[d] proof of good health for Ms. Van Loo's election of Supplemental Benefits."

(*Id.* at 2118.) Reliance also noted that because the Policy was Self-Administered, "[Reliance] typically has no record of individual coverage or premium amounts." (*Id*. a 2119.)

Meanwhile, Church's initiated an internal audit of employee files. "[W]e noticed that there were some employees where the [EIF] was not approved, or not in the employee's benefit file. So from there, [Julie Easterlin] wanted a complete, thorough audit, just to see if there were any other potential employees that were missed." (Dkt. 78-21, Johnson Dep. I at 44.) Easterlin said she did not know whether Reliance mailed Van Loo a letter in 2010. (Easterlin Dep. at 69.) Johnson testified that she did not recall Church's ever providing Van Loo with an EIF, either. (Johnson Dep. I at 43.)

After this litigation commenced, Church's uncovered information about Van Loo's medical history (information not known to either Church's or Reliance during Van Loo's employment at Church's), which they provided to the Court in their November 2015 motion for summary judgment and related filings. Based on medical records obtained during discovery, Church's asserts that Van Loo had several relevant health conditions aside from the esophageal cancer reported on the claim form. Van Loo acquired Hepatitis C from a blood transfusion in the 1980s. (Dkt. 99-5, Kennestone Hospital Consultation Report.) A 2005 pathology report

6

following a closed liver biopsy and ultrasound reported chronic hepatitis C and cirrhosis of the liver. (Dkt. 99-3, Pathology Report.) (However, Van Loo participated in a clinical trial in 2008 and 2009, "resulting in clearing of the viral load according to the patient." (Dkt. 99-9, Consultation Report.)) Church's submitted a 2016 affidavit from Margaret Simon, Manager of Medical Underwriting at Reliance, who avers that "had Donna Van Loo completed and submitted to Reliance at any time between 2007 and 2013 an evidence-of-insurability form indicating that she had Hepatitis C for more than four (4) to six (6) months (let alone over twenty years), Reliance . . . would not have issued insurance coverage to Donna Van Loo which was subject to our approval of proof of her good health." (Dkt. 102, Simon Aff., at ¶ 3.)

Plaintiffs filed a five-count complaint in this Court on February 10, 2014. (Dkt. 1, Compl.) They named both Church's and Reliance as Defendants. Motion practice ensued. On December 1, 2014, the Court granted Reliance's motion to dismiss Counts II through V of the Complaint and granted in part and denied in part Church's motion to dismiss the complaint. *Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1033 (E.D. Mich. 2014). Thus, the case moved forward with a claim for denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B) pending against Reliance (Count I), and a claim for breach of fiduciary duty under ERISA, 29 U.S.C. § 1132(a)(3), pending against Church's (Count II). Shortly thereafter, Church's filed a cross-claim against Reliance. The Court granted Reliance's motion to dismiss the cross-claim on September 17, 2015. *Van Loo v. Cajun Operating Co.*, 130 F. Supp. 3d 1097, 1110 (E.D. Mich. 2015). In the meantime, Reliance and Plaintiffs filed cross-motions for judgment on the administrative record as to Count I. On December 4, 2015 the Court granted Reliance's motion and denied Plaintiffs'. *Van Loo v. Cajun Operating Co.*, No. 14-CV-10604, 2015 WL 7889034, at *11 (E.D. Mich. Dec. 4, 2015).

The remaining claim in the case is Count II, the fiduciary-breach claim against Church's. Plaintiffs filed their motion for summary judgment on this claim on October 26, 2015. (Dkt. 78.) Church's filed a cross-motion for summary judgment on November 20, 2015. (Dkt. 81.) The motions are fully briefed, and the Court heard argument on March 2, 2016. The Court granted Church's a brief extension to file a supplemental brief, which Church's did, and Plaintiffs have responded. The matter is now ready for disposition.

## II. LEGAL STANDARD

Although both Plaintiffs and Church's seek summary judgment, they must carry different burdens to succeed on their respective motions. Because the Court granted Church's motion to strike Plaintiffs' jury demand, the "fact finder" at trial would be the Court. *Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1032 (E.D. Mich. 2014).

Because Plaintiffs have the burden of persuasion on their claim at trial, Church's may discharge its initial summary-judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support [Plaintiffs'] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If Church's does so, Plaintiffs "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must then determine whether the evidence presents a sufficient factual disagreement to require a bench trial, or whether the evidence is so one-sided that Church's must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In making this determination, the Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to Plaintiffs. *Matsushita*, 475 U.S. at 587.

Plaintiffs' burden is greater. Because they seek summary judgment on a claim for which they have the burden of persuasion at trial, their showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for [them]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)); *see also Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). In making this determination, the Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to Church's. *Matsushita*, 475 U.S. at 587.

## III. ANALYSIS

When the Court denied Church's motion to dismiss Count II of the Complaint, it held that Plaintiffs had pled sufficient factual allegations to support a claim for breach of fiduciary duty against Church's. Plaintiffs have now marshaled undisputed evidence to support their claim such that no reasonable trier of fact could find for Church's, and they are entitled to summary judgment. Church's attempts to rehash legal issues the Court decided in its prior opinions and apply non-binding precedent do not change this result.

### A. ERISA Fiduciary Breach

Plaintiffs base their fiduciary-breach claim on Church's alleged misrepresentations regarding Van Loo's level of effective coverage. Therefore, they must demonstrate that every rational trier of fact would find "(1) that [Church's] was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that [Ms. Van Loo] relied on those misrepresentations to [her] detriment." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) (citations omitted). They have made this showing.

9

### 1.  Fiduciary Capacity

It does not appear that Church's is challenging Plaintiffs' ability to show that Church's acted in a fiduciary capacity when it made the challenged statements. (*See* Church's Mot. at 10.) And the Court finds that Plaintiffs have met their summary-judgment burden on this element of the claim.

> ERISA provides, in relevant part:
>
> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, or . . . (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A). Thus, "For the purposes of ERISA, a 'fiduciary' not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006). "Employers who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust." *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000). It is only when an employer acts in the former capacity that the employer is acting as a fiduciary. *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995).

It is clear that the conduct at issue in this case "constitutes 'management' or 'administration' of the plan, giving rise to fiduciary concerns[.]'" *Hunter*, 220 F.3d at 719. In addition to Reliance's statements in the Appeal Letter, testimony from Church's employees indicates that the policy was "Self-Administered," meaning Church's not only sponsored but also administered certain aspects of the policy. Julie Easterlin, Church's corporate representative,

10

testified that Church's collected premiums via payroll deductions, which were then tallied and sent to Reliance. Reliance did not bill Church's on a monthly basis; instead, Reliance would mail a "blank sheet of payable, a table, basically, and that's what [Church's] would fill in." (Dkt. 78-19, Notice of Dep.; Dkt. 78-20, Easterlin Dep.) Easterlin stated that in 2012/2013, Church's did not provide Reliance with a list of employees who had purchased supplemental insurance. (Easterlin Dep. at 34–35.)

Testimony from Church's employees also indicates that Church's was the administrator as far as EIFs were concerned. According to Easterlin, Church's had a procedure for requesting EIFs:

> The employees would sign up for life insurance and in 2008, I think, we started doing enrollment for benefits through our Intranet. So employees would sign up online and then after, like, open enrollment, we would go run a report and see who needed to submit [EIFs]—or send [EIFs] to. And then the employees would complete those forms and send them to the insurance company. If they provide them to Church's, we would fax them to the insurance company and then shred them because they had personal health information we didn't want sitting around here.

(Easterlin Dep. at 37–38.) It appears that in 2010, this process did not run smoothly because one of Church's Senior Benefits Managers had just started: "Chandra [Matthews] . . . I think she had just started here and was trying to get ramped up and wanted to make sure employees got [the EIFs] timely and had asked Reliance for assistance with that." (Easterlin Dep. at 38.) So Matthews sent Reliance employee Taree Murphy an email requesting that Reliance handle the EIFs for 2010. (Dkt. 78-16, Matthews and Murphy Correspondence.) Murphy stated Reliance would be able to do so "as an exception this time" even though Reliance would "not typically send" EIFs. (*Id.*) By 2012, however, "once an [EIF] was submitted, [Church's] would follow up with Reliance on the status until [it] found out whether it was approved or denied." (Easterlin

11

Dep. at 40.) But Reliance would be the one to communicate with an employee once the EIF was approved or denied. (*Id.*)

Indeed, Van Loo submitted all of her enrollment forms to Church's, Church's deducted her premium payments from her paycheck, and Church's made sure that she mailed in her payments after she went on disability leave and stopped getting a paycheck. Importantly, Easterlin stated that after open enrollment, it was Church's usual practice to "run a report and see who needed to submit EOI forms—or send EOI forms to." (Easterlin Dep. at 37.) Though the record reflects that Church's partially delegated this task to Reliance in 2010, it is clear that overall, Church's acted as a plan administrator for the conduct at issue in this case. As the Court stated in its prior opinion, actions such as the ones Church's took in this case "have been held to be acts of plan administration and management by an employer-plan administrator that give rise to fiduciary liability." *Van Loo*, 64 F. Supp. 3d at 1019 (citing cases).

These facts demonstrate that Church's acted with discretionary authority to manage the Plan when it enrolled Van Loo in the Plan, processed her premium payments, and made representations concerning her level of coverage.

### 2.  Material Misrepresentations

"Misleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty.'" *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (quoting *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)). "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing" benefits to which she may be entitled. *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) (citing *In re Unisys*

*Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995)). "A fiduciary breaches his duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" *Id.* at 547 (citing *Berlin*, 858 F.2d at 1163–64). Further, "the 'duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" *Id.* at 548 (quoting *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir. 1993)).

Taken together, Church's communications with Van Loo throughout her employment constituted material misrepresentations regarding her level of effective coverage. First, Church's accepted Van Loo's benefits enrollment forms every year she was employed there. In 2012, the Church's computer system generated a message stating "CONGRATULATIONS on completing your benefits enrollment for 2013." (Oct. 18, 2012 Benefit Enrollment Form at PageID 2061.) And while some of the enrollment forms themselves mentioned the potential need for an EIF form, they stated, "you *may* be required to submit an evidence of insurability form. *If so, one will be mailed to you*." (2008 Open Enrollment Change Form (emphases added).) Throughout her employment, Church's deducted premium payments from Van Loo's paycheck. These premiums rose with the levels of coverage she selected each year. And when Van Loo stopped getting paychecks while out on leave, Church's, though Johnson, reached out to her directly to instruct her to send her payments to Reliance. (Feb. 21, 2013 Letter at PageID 1159.) This letter specifically stated that Van Loo needed to pay $97.31 for "Supplemental Life," which was the same deduction taken out of her paycheck after she increased her election to "4x salary." (*Id.*;

Johnson Dep. II at 59.) And later, Church's, through Johnson, acknowledged to Van Loo that her payments had been received. (Mar. 1, 2013 Letter at PageID 2063.)

Further muddying the waters, Church's Benefits Guides did not clarify when an EIF would be needed. The 2012 Benefits Guide stated, "You can purchase extra life insurance. . . . You may be required to complete an evidence of insurability form." (Church's 2012 Benefits Guide at PageID 1179.) Further, "If you want to increase your coverage during open enrollment, you may increase by one level (such as from 1x salary to 2x salary). Increases of more than this, or more than $150,000, may require an Evidence of Insurability form." (Church's 2012 Benefits Guide at 1187.) The 2013 Benefits Guide provided, "If you want to increase your coverage during open enrollment, you may increase by one level (such as from 1x salary to 2x salary). Increases of more than this, or more than $150,000, may require an Evidence of Insurability form." (Church's 2013 Benefits Guide at PageID 2106.) Easterlin testified that these guides contained the only information regarding the proof of good health requirement provided to employees during open enrollment. (Easterlin Dep. at 80.) And neither Easterlin nor Johnson could recall whether the Policy itself was ever posted on the Church's intranet such that employees could access it. (Dkt. 78-22, Johnson Dep. II at 8.) And neither could say that Church's ever mailed Van Loo an EIF.

In sum, the Policy provides that "[a]mounts of insurance over $300,000 are subject to our approval of a person's proof of good health." (Policy at PageID 2022.) "Amounts of insurance," according to this Court's interpretation of the undisputed Policy language, include basic life insurance and supplemental life insurance. (*Id*.) As this Court stated in a prior ruling, the guaranteed-issue threshold of $300,000 applies to "the total amount of insurance purchased by an insured, rather than merely the supplemental coverage purchased." *Van Loo v. Cajun Operating*

14

*Co.*, 130 F. Supp. 3d 1097, 1107 (E.D. Mich. 2015). Based on Van Loo's elections and salary history, she crossed the guaranteed-issue threshold in 2008. The record is undisputed that Church's did not send an EIF at that time, even though they continued to make representations regarding Van Loo's coverage under the Plan.

The only evidence that Van Loo was ever mailed an EIF are the statements by Reliance in their administrative correspondence denying the claim. There, Reliance stated that Taree Murphy had mailed a form in 2010. Even taking that as true, based on the Policy language and the undisputed record in this case, 2010 was two years too late. As Van Loo crossed the $300,000 guaranteed-issue threshold in 2008, she was entitled to have her health evaluated at that time. Far from doing so, Church's continued to represent to Van Loo that she had her supplemental life insurance coverage. And after 2008, Van Loo's elections were limited to 1x salary increases. The benefits guides made clear that these elections would not have required an EIF.

In short, the Court finds that Plaintiffs have met their summary-judgment burden by presenting evidence that Church's made representations to Van Loo implying that she had completed her enrollment for a level of coverage that never actually became effective. Church's attempts to isolate and neutralize individual statements do not change this result.

Church's first argues that "promissory" statements are not actionable, and therefore, the statements that an EIF would be mailed if required cannot support a fiduciary-breach claim. But it is clear that these statements merely provide the backdrop for Church's misrepresentations regarding Van Loo's level of effective coverage: based on communications from Church's, a reasonable person would conclude that an EIF would be provided if necessary. No EIF was mailed by Church's. Church's then represented to Van Loo that her enrollment in benefits had

15

been completed and proceeded to deduct the appropriate level of premiums from her paycheck and later asked her to pay those premiums herself. Thus, in representing that an EIF would be mailed if necessary, Church's was not communicating a "future hope or goal," *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 645 (8th Cir. 2007), or making representations that were "entirely true under the terms of [the] then-existing plan," only to change the Policy later. *Sprague v. GMC*, 133 F.3d 388, 405 (6th Cir. 1998) (en banc). And further, given that Church's did not make the Policy available on its intranet, and the Benefits Guides and Enrollment Forms appear to be the only source of information on the EIF available to Church's employees, employees *could* "reasonably rely," *Kalda*, 481 F.3d at 645, on the representation in thinking that their benefits had become effective. *Id.*

Second, Church's says that the statements congratulating Van Loo on completing her enrollment and, later, asking her to pay premiums while out on leave, were "truthful statements that did not suggest that Reliance would or had qualified her" for coverage over the guaranteed-issue amount. (Church's Mot. at 13.) But this argument ignores the fact that Church's never clarified that requirement to Van Loo in the first place—their communications and representations regarding the Policy left the impression that if an EIF was needed, it would be mailed. Church's cannot say that their beneficiaries should have known they would need to take a further step past enrollment to qualify when they never communicated the need for that additional step in the first place.

Third, Church's says that omissions can only be a basis for fiduciary liability where "the beneficiary had requested information from the fiduciary" and the fiduciary "kn[ows] its omission or its silence might be harmful." (Church's Mot. at 12.) The Court rejected this argument in the first *Van Loo* opinion, relying on the same cases Church's cites in its brief.

16

While the Court will not rehash its entire analysis here, ultimately, the Court relied upon *Gregg v. Transportation Workers of America International*, 343 F.3d 833, 847–48 (6th Cir. 2003) for the following statement of law:

> ERISA imposes trust-like fiduciary responsibilities and a trustee is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person.... Defendants had an affirmative obligation to provide Plaintiffs with this material information whether or not they asked for it.

*Id.* True, in *Gregg*, "The fact that Plaintiffs did request disclosure of this material information render[ed] Defendants' violations of *Pirelli*, *Armstrong* and *Krohn* all the more apparent." *Id.* But, as was the case when the first *Van Loo* opinion issued,

> it is not material that Ms. Van Loo did not ask Church's about the EIF requirement. The parties cite no case law to demonstrate that misleading information that a fiduciary provides on its own initiative to a plan participant, that is individualized to her coverage and circumstances, should be treated any differently than misleading individualized information that is provided in response to a specific request. Indeed, the court in *Krohn* noted that the plan participant's 'failure to specifically request information from [defendant] about long-term disability benefits did not relieve [defendant] of its fiduciary duty to provide complete information . . .' And, as discussed above, the Sixth Circuit has since affirmatively held that fiduciaries have a duty to provide material information to beneficiaries 'whether or not they ask[ ] for it.'

*Van Loo*, 64 F. Supp. 3d at 1023 (citations omitted).

Finally, Church's says that it is "requir[ed] that any representation be at least negligent or intentional" and that neither state of mind can be attributed to Church's because "as of December 2010, Church's had confirmed with Reliance its understanding that an [EIF] would only be required when Supplemental Life Insurance (not combined with Basic Life) exceeded $300,000." (Church's Mot. at 13.) The Court assumes that Church's is relying upon the following language from *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002): "A fiduciary breaches his duty by providing plan participants with materially misleading

17

information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" (citation omitted).

It is true that "ERISA imposes a 'prudent person' fiduciary obligation, which is codified in the requirement that a plan fiduciary exercise his duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man . . . acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.'" *Krohn*, 173 F.3d at 547 (quoting 29 U.S.C. § 1104(a)(1)(B)). But the case Church's cites in support of the proposition that "actionable fiduciary misrepresentation under ERISA must be at least negligent and fall short" of the prudent man standard, actually declined to address the issue:

> The district court's minor premise is that any material inaccuracy, *even an unintentional error*, violates [a] fiduciary duty. The minor premise is problematic [under Seventh Circuit case law] . . . though it has some support elsewhere. We need not consider the minor premise, however, because the district court's major premise [that a fiduciary duty was owed in the first place] is mistaken.

*Beach v. Commonwealth Edison Co.*, 382 F.3d at 656, 568 (7th Cir. 2004) (citing *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407 (5th Cir. 2003); *Bins v. Exxon Co.*, 220 F.3d 1042 (9th Cir. 2000) (en banc)).

It was only in the dissenting opinion in *Beach* that Judge Ripple "harmoniz[ed]" (Church's Mot. at 13) *James* with the Seventh Circuit case law purporting to engraft an intent requirement onto breach-of-fiduciary duty claims. And even then, Judge Ripple's conclusion was not what Church's represents it to be in its brief. Judge Ripple merely concluded that "importing the intent to deceive requirement—synonymous in tort law with fraud or deceit—into this type of ERISA fiduciary case lacks any grounding. . . . the requirement of a subjective intent to deceive would effectively mean that employers-administrators have a mere duty to avoid committing

18

fraud." *Id.* at 668–69 (Ripple, J., dissenting). Accordingly, "when an employer-administrator speaks—either directly or through its benefits representatives—it violates its fiduciary duties when it affirmatively misinforms a beneficiary knowing its statement is false, when it recklessly misinforms not knowing whether its statement 'is true or not,' and when it misinforms under circumstances indicating it should have known the falsity of its statement," which is "not a 'duty of prevision' or a 'standard of absolute liability.'" *Id.* at 670 (Ripple, J., dissenting) (quoting *Frahm v. Equitable Life Assur. Soc'y of U.S.*, 137 F.3d 955, 960 (7th Cir. 1998)).

Judge Ripple's conclusions, though not binding, are consistent with *James*' directive that a fiduciary might incur liability for both negligent and intentional misrepresentations. But whether the law of the Sixth Circuit indeed requires that a breach-of-fiduciary-duty plaintiff prove one of those mindsets is a question for another day, because Plaintiffs have proved that Church's was at least negligent in 2008. Indeed, Church's argues that "if Church's never sent an [EIF] to Ms. Van Loo, it was only because Church's, quite reasonably, was unaware that Reliance would later insist on [an EIF] for Ms. Van Loo." (Church's Mot. at 22–23.) Yet Church's admits that it was the Plan Administrator, and the testimony from its representatives makes clear that Church's had primary responsibility to distribute EIFs when necessary. And while Church's points the finger at Reliance, stating that Reliance's Plan Administrator Guides did not offer Church's any guidance on the EIF requirement, it is undisputed that Church's had access to the Policy. And the Policy articulated the EIF requirement.

Moreover, Matthews' e-mails to Murphy do not show that Church's confirmed that it had the correct understanding of the Policy. The record reflects that in 2010, Matthews sent Taree Murphy, a Reliance employee, the following e-mail:

> I am really buried with open enrollment data and payroll year-end work, but I am trying to review elections for EOI. Can you please confirm the following: EOI is

> needed for— New hires who elect an amt of supp life that is over $300k[;] Open enrollment changes who elect more than a 1-level increase in either supp or spouse life OR[;] Open enrollment changes who elect more than $300k in supp life coverage[.] Also, can you provide me with your most recent EOI? If we provided you with a list of the employees who need EOI and their addresses, could you send?

(Dkt. 78-16, Matthews and Murphy Correspondence.) Murphy responded (in relevant part) on December 2, 2010:

> *I will be back in the office tomorrow and will review your contract to confirm the EOI rules.* What you have detailed below is our standard, *but I want to make sure that there are no special provisions in place before I confirm.*

(*Id.* (emphasis added).) Murphy's e-mail is not an unequivocal approval of Matthews' misunderstanding of the EIF requirement, and there are no further follow-up e-mails in the record from Murphy. And a 2010 e-mail does not reflect that Church's was not negligent in its administration of the EIF requirement in 2008, the year that it mattered for Donna Van Loo.

In short, Church's created a situation where a reasonable person would assume that an EIF would be provided if needed, failed to provide such an EIF to Ms. Van Loo in 2008 when she needed to fill one out, and represented to her, for the following four years, that the coverage levels she had chosen had become effective.

### 3. Detrimental Reliance

Plaintiffs' last task is to show that Van Loo "relied on [Church's] misrepresentations to [her] detriment." *James*, 305 F.3d at 449. "[A] plaintiff's reliance on the misrepresentation must be 'reasonable.'" *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2006). Church's asserts that Plaintiffs have merely presented "speculation and inference" and therefore have not met their burden. Not so.

In *James*, the Sixth Circuit concluded that "Plaintiffs relied upon the[] material misrepresentations [at issue] in deciding to take early retirement." 305 F.3d at 456. The plaintiffs

had testified that the representations that their health benefits would remain the same for the rest of their lives had encouraged them to take early retirement, only to be told later that the benefits had changed. And a district court in this Circuit recently held that a beneficiary "reasonably relied to her detriment upon the misrepresentations of [a plan fiduciary] by paying premiums and by foregoing alternative coverage." *Rainey v. Sun Life Assur. Co. of Canada*, No. 3-13-0612, 2014 WL 4979335, at *2 (M.D. Tenn. Oct. 6, 2014).

As Van Loo is deceased, she could not be deposed in this litigation. However, Van Loo paid premiums for the level of coverage she thought had become effective, first through her paycheck deductions, and then by paying her premiums directly to Church's. The fact that Van Loo continued to enroll in—and increase the amount of—her supplemental life insurance shows that she expected those increases to be effective. And it is obvious that a plan participant, operating under the belief that her elected coverage was effective, would not seek coverage elsewhere. And there is nothing in the record to suggest she ever sought alternative coverage. The case Church's cites for the proposition that Plaintiffs must affirmatively show that "Van Loo read the alleged misrepresentations" does not so hold. (Church's Mot. at 15.) In *In re Computer Sciences Corp. ERISA Litigation*, 635 F.Supp.2d 1128, 1128 (C.D. Cal. 2009), "Plaintiffs *admitted at their depositions* that they relied only on information other than the documents at issue [the alleged misrepresentations] in making their Plan investment decisions." For that reason, the court held that there was no genuine issue of material fact regarding reliance. And the *Computer Sciences* court did not comment on what evidence would have been necessary to create one, or to tip the summary-judgment scale in favor of the plaintiff.

While it is true that Van Loo was herself an attorney (Church's Mot. at 17), Church's has offered no evidence that she had the ability to access the Policy such that she should have known

that she actually needed an EIF; to the contrary, neither Johnson nor Easterlin could say whether the Policy was ever available via the company's intranet. The materials that were available merely repeated the statement Church's made on its open enrollment forms—that if an EIF were needed, one would be provided. Just because Van Loo may have been aware that an "EIF *might* be required," does not mean she was aware of when it was required, especially where there is evidence that Church's led her to believe that one was not required. (Church's Mot. at 18 (emphasis added).)

And again, even accepting that Van Loo received the EIF that Reliance mailed in 2010, this was too late: Van Loo was entitled to apply for coverage based on her health at the time she crossed the $300,000 guaranteed issue threshold, which was 2008. *See, e.g.*, *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 718 (8th Cir. 2014) ("MetLife has an interest in not allowing those who may be very ill from taking out a large life insurance policy shortly before death. Evidence of insurability allows MetLife to scrutinize certain policy selections before approving an untimely policy request.").

On a related note, it might be true that even if Van Loo had submitted an EIF in 2008, Reliance would have denied coverage based on her Hepatitis C. (Church's Supp. Br. at 1.) But the point is that Van Loo was entitled to be evaluated in 2008, not that she was entitled to a particular outcome in terms of coverage. Had Van Loo been approved for coverage, her increases would have been effective and her parents would have received the full amount they claimed upon her death. Had Van Loo been denied additional coverage, she could have kept her initial elections and sought additional coverage from another provider. Either way, Van Loo would have been in a position to make informed decisions about how to ensure that her beneficiaries would receive the amount of money she wanted them to receive upon her death. But Church's

22

took this choice away from Van Loo when it failed to send her an EIF in 2008 and yet still led her to believe that her supplemental coverage election became effective. Thus, the Court does not need to wade any deeper into Ms. Van Loo's medical history.

## IV. CONCLUSION

The Court does not discern any genuine issues of material fact precluding summary judgment in this matter. Based on the undisputed evidence, Church's failed to provide Donna Van Loo an EIF in 2008, the year she was entitled to fill one out in order to qualify for supplemental life insurance coverage past the guaranteed-issue threshold. Despite this failure, Church's continued to make material misrepresentations to Van Loo, leading to a reasonable belief that coverage was effective. Van Loo paid her premiums, even submitting them directly to Church's when she went out on disability leave. But that coverage, which Plaintiffs expected when they filed their claim after the death of their daughter, never became effective—because Church's failed to provide an EIF in 2008, when Van Loo's health should have been evaluated. Plaintiffs are entitled to summary judgment on their breach-of-fiduciary duty claim against Church's.

Accordingly, IT IS ORDERED that Plaintiffs' Motion for Summary Judgment (Dkt. 78) is GRANTED. Church's Motion for Summary Judgment (Dkt. 81) is DENIED. Church's is liable to Plaintiffs in the amount of $314,000. IT IS FURTHER ORDERED that Plaintiffs shall submit a proposed judgment within seven days of this order. Any objections to such proposed judgment shall be filed within seven days of Plaintiffs' submission. *See* E.D. Mich. LR 58.1(c).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  June 6, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 6, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson